YATES ET AL., APPELLANTS, *v.* MANSFIELD BOARD
OF EDUCATION, APPELLEE, ET AL.

[Cite as *Yates v. Mansfield Bd. of Edn.*,
102 Ohio St.3d 205, 2004-Ohio 2491.]

(No. 2002–2242—Submitted December 3, 2003—Decided June 2, 2004.)

ALICE ROBIE RESNICK, J.

{¶ 1} As this appeal involves the propriety of a summary judgment that was entered in favor of defendant-appellee, Mansfield Board of Education, we will construe the evidence most strongly in favor of plaintiffs-appellants, Tony and Sandra Yates.

{¶ 2} In a 2002 affidavit, Amanda, formerly a ninth-grade student at the Cline Avenue campus of Mansfield Senior High School, said that during the 1996–1997 school year, she informed certain school officials, including principal Michael Joseph Dick, that on three separate occasions, "Donald Coots, a coach and teacher at the school, made inappropriate contact with [her] of a sexual nature. He touched [her] with his hands and penis but [they] did not have sex. Mr. Coots also made sexually explicit comments to [her]."

{¶ 3} Dick conducted his own investigation of these allegations and concluded that Amanda was lying. Amanda claims that she was expelled from school for harassing a staff member. No action was taken against Coots, and the alleged abuse was never reported to the police or to a children services agency.

{¶ 4} Three years later, on February 5, 2000, Coots engaged in sexual activity with another ninth-grade student at Mansfield High, Ashley, who at that time was 15 years of age. After returning from a boys' basketball game in Findlay at which Ashley helped to record team statistics, and while Ashley waited at the school for her mother to arrive, Coots and Ashley went into the upstairs equipment room where they kissed. Coots pushed Ashley's head down and unzipped his pants, at which time Ashley performed fellatio on Coots.

{¶ 5} Early the following week (February 5, 2000, was a Saturday), a friend in whom Ashley had confided over the weekend informed the school counselor about what had transpired between Coots and Ashley. When confronted by the principal, Coots and Ashley admitted to the incident. The police and Ashley's parents were immediately notified, and Coots was forced to resign his employment. Ultimately, Coots was convicted of sexual battery, a third-degree felony.

{¶ 6} Appellants brought this action both individually and as parents and legal guardians of their daughter, Ashley, against Coots and appellee. As relevant here, appellants allege that they and Ashley were injured as a proximate result of appellee's failure to report the sexual abuse alleged in 1996–1997 in violation of R.C. 2151.421 and that appellee was negligent in retaining Coots on the teaching staff at Mansfield Senior High School after his earlier alleged sexual encounters without supervising, monitoring, or otherwise protecting against his contacts with female schoolchildren.

{¶ 7} Appellee moved for summary judgment on grounds of sovereign immunity as granted to political subdivisions under R.C. 2744.02(A)(1). Appellants opposed the motion on the basis of the exceptions to immunity set forth in R.C. 2744.02(B)(4) and (5). The trial court granted appellee's motion for summary judgment, finding that "the Board is entitled to sovereign immunity because neither of the exceptions cited by the plaintiffs appl[ies]" and ordered that the case proceed against Coots only. Appellants then dismissed their claims against Coots pursuant to Civ.R. 41(A)(1).

{¶ 8} In a split decision, the court of appeals affirmed the judgment of the trial court with regard to both exceptions to sovereign immunity. As to former R.C. 2744.02(B)(5), which provides that "a political subdivision is liable for injury * * * when liability is expressly imposed upon the political subdivision by a section of the Revised Code * * *," Am.Sub.H.B. No. 215, 147 Ohio Laws, Part I, 909, 1150, the majority found that R.C. 2151.421 does not impose liability under the present

circumstances.[1]  According to the court of appeals, "R.C. 2151.421 creates a duty only to a specific child," meaning that the board's failure to report the alleged abuse of Amanda could have resulted in liability for injury only to her, not to subsequent victims.  Thus, even though Ashley was sexually abused by the teacher who had molested Amanda, the court of appeals held that the board's "failure to report the prior incident of sexual misconduct between Coots and Amanda did not qualify as an exception to immunity under R.C. 2744.02(B)(5)."

{¶ 9} In *Yates v. Mansfield Bd. of Edn.*, 99 Ohio St.3d 48, 2003-Ohio-2461, 788 N.E.2d 1062, we accepted the discretionary appeal in this cause, reversed the judgment of the court of appeals with regard to the applicability of R.C. 2744.02(B)(4), and ordered that briefing proceed on Proposition of Law No. I, which involves the applicability of R.C. 2744.02(B)(5).  The cause is now before this court upon the acceptance of the discretionary appeal on Proposition of Law No. I.

{¶ 10} The sole issue presented for our review is whether to adopt or reject that proposition of law, which states:

{¶ 11} "When a school board violates R.C. 2151.421(A)(1)(a) by not reporting a student's allegation of abuse against a school teacher, and the same school teacher sexually abuses another student, then the school board is not entitled to R.C. [Chapter] 2744 immunity pursuant to *Campbell v. Burton* (2001), 92 Ohio St.3d 336 [750 N.E.2d 539], syllabus."

{¶ 12} Child abuse is a pervasive and devastating force in our society.  It has long been considered "a problem of epidemic proportions.  * * * By 1973 child abuse was recognized as the most common cause of death of small children in the United States."  6 American Jurisprudence Proof of Facts 2d (1975), Failure to Report Suspected Case of Child Abuse, 345, 351.  In 1977, it was reported that "[a]pproximately one million children are maltreated by their parents each year. Of these children, as many as 100,000 to 200,000 are physically abused, 60,000 to 100,000 are sexually abused, and the remainder are neglected.  Each year, more than 2,000 children die in circumstances suggestive of abuse or neglect."  Besharov, The Legal Aspects of Reporting Known and Suspected Child Abuse and Neglect (1978), 23 Vill.L.Rev. 458.  Child abuse, moreover, is not confined to the home.  "More often than we would like to admit, children are abused and neglected by the institutions meant to care for them."  Id. at 512.  See, also, R.C. 2151.011(B)(27)-(29) and 2151.421(M).

{¶ 13} Recognizing that these children are helpless to protect themselves, the legislatures in all 50 states, as well as the District of Columbia and three

---

1. R.C. 2744.02(B)(5) now reads, "when civil liability is expressly imposed * * *." 2002 Am.Sub.S.B. No. 106.

territories, have enacted child-abuse reporting laws. See DeFrancis & Lucht, Child Abuse Legislation in the 1970's (Rev.Ed.1974) 6; Annotation, Validity, Construction, and Application of State Statute Requiring Doctor or Other Person to Report Child Abuse (1989), 73 A.L.R.4th 782, 789–790. "In the history of the United States, few legislative proposals have been so widely adopted in so little time." Paulsen, The Legal Framework for Child Protection (1966), 66 Colum.L.Rev. 679, 711.

{¶ 14} Accordingly, R.C. 2151.421 provides:

{¶ 15} "(A)(1)(a) No person described in division (A)(1)(b) of this section who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion to the * * * public children services agency or a municipal or county peace officer in the county in which the child resides or in which the abuse or neglect is occurring or has occurred.

{¶ 16} "(b) Division (A)(1)(a) of this section applies to any person who is [a] * * * school teacher; school employee; school authority * * *."

{¶ 17} In *Campbell*, we were asked to decide whether R.C. 2151.421 expressly imposes liability on political subdivisions and their employees for purposes of the immunity exception in R.C. 2744.02(B)(5). In that case, the parents of Amber Campbell, an eighth-grade student at Baker Junior High, brought suit on behalf of their daughter claiming that the Board of Education of Fairborn City Schools and certain school employees had violated R.C. 2151.421 when they failed to report Amber's allegations that she was sexually abused by a family friend. In determining that the defendants were not entitled to immunity as respectively granted to political subdivisions and their employees under R.C. 2744.02(A)(1) and 2744.03(A)(6), we held:

{¶ 18} "1. Within the meaning of R.C. 2744.02(B)(5)[,] * * * R.C. 2151.421 expressly imposes liability for failure to perform the duty to report known or suspected child abuse.

{¶ 19} "2. Pursuant to R.C. 2744.02(B)(5), a political subdivision may be held liable for failure to perform a duty expressly imposed by R.C. 2151.421." *Campbell*, 92 Ohio St.3d 336, 750 N.E.2d 539, paragraphs one and two of the syllabus.

{¶ 20} In reaching these holdings, we explained:

{¶ 21} "In *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 119, 554 N.E.2d 1301, 1308, we found that the General Assembly enacted R.C. 2151.421 to safeguard children from abuse. In many instances, only the state and

its political subdivisions can protect children from abuse. *Id.* Additionally, we found that children services agencies must protect children from abuse and eliminate the source of any such abuse. *Id.* Thus, it is clear that the concern of the General Assembly in enacting R.C. 2151.421 was not political subdivisions or their employees, but the protection of children from abuse and neglect.

{¶ 22} " * *

{¶ 23} "The General Assembly enacted R.C. 2151.421 to provide special protection to children from abuse and neglect. In order to achieve this goal, the General Assembly had to encourage those with special relationships with children, such as doctors and teachers, to report known or suspected child abuse. R.C. 2151.99 imposes a criminal penalty for failure to report. Furthermore, the General Assembly encouraged reporting by providing immunity from both civil and criminal liability to the persons whose duty it is to report. R.C. 2151.421(G)(1) [now R.C. 2151.421(G)(1)(a) ]. Thus, the General Assembly clearly encouraged reporting and specifically discouraged the failure to report by imposing a criminal penalty pursuant to R.C. 2151.99." Id. at 341–342, 750 N.E.2d 539.

{¶ 24} It is also clear that the General Assembly enacted R.C. 2151.421 as a mechanism for identifying and protecting abused and neglected children at the earliest possible time. In so doing, the General Assembly did not intend to withhold protection until such time as a child is actually injured. To the contrary, R.C. 2151.421(A)(1)(a) requires designated persons to *"immediately* report" their "knowledge *or suspicion"* that a child "has suffered *or faces a threat of suffering"* any injury indicative of abuse or neglect. Thus, the General Assembly clearly intended to reach potential victims of child abuse, as well as children who have already suffered abuse, in hopes that these children might be protected before they suffer any actual injury or damage.

{¶ 25} Moreover, while the board correctly points out that the primary purpose of reporting is to facilitate the protection of abused and neglected children rather than to punish those who maltreat them, it is clear that the General Assembly considered identification and/or prosecution of the perpetrator to be a necessary and appropriate adjunct in providing such protection, especially in the institutional setting. Thus, R.C. 2151.421(F)(1) and (2) provide that children services agencies shall investigate each report of known or suspected child abuse in cooperation with law enforcement to determine, among other things, "the cause of the injuries * * * and the person or persons responsible" and "make any recommendations to the county prosecuting attorney or city director of law that it considers necessary to protect *any children* that are brought to its attention." (Emphasis added.) In addition, R.C. 2151.421(M) provides that in cases involving allegations of institutional abuse, the agency must give special notice to the

appropriate officer or authority of the out-of-home care entity regarding "the person named as the alleged perpetrator in the report."

{¶ 26} Nevertheless, the court of appeals found that because R.C. 2151.421(A)(1)(a) uses the singular term "child," and because R.C. 2151.421(C) requires the disclosure of personal information with regard to an identified abused child, the General Assembly intended to protect only the one particular child who is alleged to be abused, regardless of the circumstances. By virtue of this finding, the court of appeals confined our holdings in *Campbell* to the situation in which it is alleged that a school board's failure to report the sexual abuse of a minor student resulted in the continued or further abuse *of the same student*. The court was then able to distinguish *Campbell* from this case, since appellants are claiming that the board's failure to report the sexual abuse of a particular minor student resulted not in the further abuse of that student, but ultimately in the sexual abuse *of a different student*.

{¶ 27} In reaching these conclusions, the court of appeals relied heavily on *Curran v. Walsh Jesuit High School* (1995), 99 Ohio App.3d 696, 651 N.E.2d 1028, in which the Ninth District Court of Appeals reached the same result, although not on grounds of sovereign immunity. In *Walsh*, two minor students at Walsh Jesuit High School, Mark Cabaniss and Michael Curran, were allegedly abused by the same teacher. Curran brought suit against the school and the Detroit Province Society of Jesus, alleging in part that defendants were negligent in failing to report the prior sexual abuse of Cabaniss in violation of R.C. 2151.421. The court of appeals held that Curran had no standing to bring a claim under R.C. 2151.421 based on the school's failure to report the abuse of a different student, reasoning as follows:

{¶ 28} "We believe that R.C. 2151.421 imposes a duty which is owed solely to the minor child of whom reports have been received concerning abuse or neglect. Compare *Neuenschwander v. Wayne Cty. Children Serv. Bd.* (1994), 92 Ohio App.3d 767, 637 N.E.2d 102. In so holding, we find instructive the Supreme Court of Ohio's statement in *Brodie* that R.C. 2151.421 is 'intended to protect a specific child who is reported as abused or neglected.' *Brodie [v. Summit Cty. Children Serv. Bd.,* 51 Ohio St.3d] at 119, 554 N.E.2d at 1308. Accordingly, any reporting duty imposed upon Walsh officials under R.C. 2151.421 would be owed to Cabaniss rather than to Curran. Therefore, absent a duty running to Curran, it was not error for the trial court to grant the defendants summary judgment on the claims alleging negligence *per se* under R.C. 2151.421." *Curran,* 99 Ohio App.3d at 700, 651 N.E.2d 1028.

{¶ 29} Although couched in the amorphous language of legal duty and sovereign immunity, these holdings effectively provide that a school official who responds to an allegation that a teacher sexually assaulted a minor student by

arrogating to himself the authority to dispense with the statutory reporting requirements and preempt an investigation by children services—and then grants the alleged perpetrator continued and unfettered access to the children committed to his care and control—may nevertheless escape liability when the same teacher sexually abuses another minor student at the same school. Under these holdings, liability astoundingly pivots on whether the offending teacher is considerate enough of the school's reporting position to avoid molesting the same child twice. Thus, if we carry these holdings to their logical extreme, the school could decide to retain the services of a teacher who sexually abuses one minor student after another ad infinitum, could then fail to report its knowledge of each successive incident, and yet incur no liability under R.C. 2151.421 so long as the abusing teacher happens not to abuse the same child more than once.

{¶ 30} We find this result to be entirely inconsistent with the beneficent purpose of the statute. By focusing on the referent "child" in R.C. 2151.421(A)(1)(a) and a few snippets from our opinion in *Brodie*, these courts have managed to extirpate the relational underpinnings of mandatory reporting. Because abused and neglected children lack the ability to ameliorate their own plight, R.C. 2151.421 imposes mandatory reporting duties on "those with special relationships with children, such as doctors and teachers." *Campbell*, supra, 92 Ohio St.3d at 342, 750 N.E.2d 539. See, also, R.C. 2151.421(A)(1)(b). These persons, when acting in their official or professional capacity, hold unique positions in our society. They are not only the most likely and qualified persons to encounter and identify abused and neglected children, but they are often directly responsible for the care, custody, or control of these children in one form or another. See Annotation, supra, 73 A.L.R.4th at 829; Besharov, supra, 23 Vill.L.Rev. at 466–468; Ramsey & Lawler, The Battered Child Syndrome (1974), 1 Pepperdine L.Rev. 372, 381. Those persons who do not have regular contact with children and who lack the necessary training or skill to detect the symptoms of child abuse are permitted, but not required, to report their knowledge or suspicions concerning abuse or neglect. See R.C. 2151.421(B). It is inconsistent with this design to hold that the statutory reporting duty runs solely to the identified abused child in the situation where the reporter to whom that child's control and protection has been entrusted also has direct control over the alleged perpetrator, other potential victims, and the environment in which they are brought together.

{¶ 31} Nor does our decision in *Brodie* require or countenance such a result. *Brodie* involved a claim for damages on behalf of Tara Cook, a minor child who ended up in a coma after the Summit County Children Services Board allegedly failed to properly investigate reports that she was being abused at home by her natural father and a female cohabitant. The children services board and its

agents moved for dismissal of the claim under several theories of defense, including the public-duty rule. As relevant here, we held:

{¶ 32} "A children services board and its agents have a duty to investigate and report their findings as required by R.C. 2151.421 when a specific child is identified as abused or neglected, and the public duty doctrine may not be raised as a defense for agency failure to comply with such statutory requirements." *Brodie*, 51 Ohio St.3d 112, 554 N.E.2d 1301, paragraph two of the syllabus.[2]

{¶ 33} In holding the public-duty rule inapplicable, we found that "the action required by the statute is not directed at or designed to protect the public at large, but intended to protect a specific child who is reported as abused or neglected." Id. at 119, 554 N.E.2d 1301. We also stated that the statute's "mandate is to take affirmative action on behalf of a specifically identified individual" in order to "prevent further child abuse or neglect in specific, individual cases." Id.

{¶ 34} Assuming that the investigative duties of a children services board can be analogized to the initial reporting duties of a person described in R.C. 2151.421(A)(1)(b), our decision in *Brodie* simply does not address the situation where the identified abused child is acted upon in an environment that places other children in danger of being injured by the same perpetrator. Since the child who was reported abused in *Brodie* was also the person claiming injury, there was no occasion to consider any special circumstances involving other children. But it would be perfectly consistent to find that while the statute is not directed at or intended to protect the public at large, it is intended to protect classes of children in certain situations. For example, one would have to interpret *Brodie* quite myopically in order to surmise that our decision would have been any different if the person claiming injury in that case had been a sibling of Tara Cook living in the same household.

{¶ 35} In fact, this was precisely the situation that confronted the Supreme Court of South Carolina in *Jensen v. Anderson Cty. Dept. of Social Serv.* (1991),

---

2. *Brodie*, 51 Ohio St.3d 112, 554 N.E.2d 1301, arose out of events that occurred during that twilight period in the early 1980s when the doctrine of municipal immunity had been judicially abolished, R.C. Chapter 2744, 141 Ohio Laws, Part I, 1699, 1743, was not yet effective, and the public-duty rule was clearly viable. Since then, we have held that while political subdivisions may be held liable for failure to comply with the reporting requirements of R.C. 2151.421, they are immune from liability for failure to comply with the investigative requirements of R.C. 2151.421. See *Butler v. Jordan* (2001), 92 Ohio St.3d 354, 750 N.E.2d 554; *Marshall v. Montgomery Cty. Children Serv. Bd.* (2001), 92 Ohio St.3d 348, 750 N.E.2d 549. The court has also abolished the public-duty rule with regard to actions against the state brought pursuant to R.C. Chapter 2743, the Court of Claims Act. See *Wallace v. Ohio Dept. of Commerce, Div. of State Fire Marshal*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018. At present, the public-duty rule remains viable as applied to actions brought against political subdivisions pursuant to R.C. Chapter 2744. Id. at 281, 2002-Ohio-4210, 773 N.E.2d 1018, fn. 13.

304 S.C. 195, 403 S.E.2d 615. In that case, an action was brought to recover for the wrongful death of a three-year-old child, Michael Clark, alleging that the Anderson County Department of Social Services and its agents had failed to properly investigate a report of child abuse involving Michael's brother, Shane Clark, pursuant to that state's Child Protection Act, S.C.Code Ann. 20–7–480 et seq. In determining that Michael had a viable cause of action under the Act, the court of appeals in that case employed a "special duty" test that had been formulated as an exception to the public-duty rule. Applying this test, the court of appeals concluded that Michael was plainly a member of the class of persons the statute was designed to protect. In particular, the court of appeals found that since "Shane Clark had visible physical injuries which pointed to child beating * * *, [the agency] could foresee that serious injury was likely to come to the Clark children if there were no intervention to protect them." Id. at 200, 403 S.E.2d 615, citing *Jensen v. South Carolina Dept. of Social Serv.* (S.C.App.1988), 297 S.C. 323, 331, 377 S.E.2d 102.

{¶ 36} The agency challenged the special-duty test on the ground that it fails to consider legislative intent or ascertain the existence of a special relationship. The South Carolina Supreme Court disagreed, finding instead that "the special duty analysis is in itself an attempt to determine legislative intent" and that "the finding of a special relationship or special circumstances is implicit in the [test]." Id. at 201–202, 403 S.E.2d 615. The court then went on to explain:

{¶ 37} "[T]he purpose of the child abuse statutes is to provide protection for children from being abused. The statutes mandate investigation and intervention to remove endangered children when abuse has been reported. Therefore, the specific class is identifiable before the fact. When the abuse was reported in this case, a relationship was established between the Clark children and DSS." Id. at 202–203, 403 S.E.2d 615.

{¶ 38} A similar analysis is reflected in the Eight Appellate District's decision in *Hite v. Brown* (1995), 100 Ohio App.3d 606, 654 N.E.2d 452. In that case, Sandra Hite's two daughters were allegedly molested by their maternal grandfather, Frank Brown. They brought suit against a psychologist, Robert Rogers, among others, claiming that Rogers had violated R.C. 2151.421 when he failed to report a prior allegation made by Hite's niece that she had been molested by Brown.

{¶ 39} In considering whether Rogers's violation of the statute constituted negligence per se, the court found that although R.C. 2151.421 sets forth a specific duty to report known or suspected child abuse, the plaintiffs had not proved themselves to be within the class of persons the statute was designed to protect. In so finding, the court quoted from *Brodie* to the effect that the statutory mandate is to take affirmative action on behalf of a specifically

identified child. However, unlike the court in *Curran,* supra, the court in *Hite* did not conclude its analysis at this point. Instead, the court went on to explain, "None of the plaintiffs received treatment or counseling from the psychologist. It follows that they have failed to establish that the psychologist * * * breached any duty owed to them." *Hite,* 100 Ohio App.3d at 617, 654 N.E.2d 452. In other words, in the absence of a special relationship between the psychologist and any of the plaintiffs, the psychologist owed them no duty to report the niece's allegations.

{¶ 40} Finally, in *Perry v. S.N.* (Tex.1998), 973 S.W.2d 301, the parents of children designated B.N. and K.N. alleged that certain defendants saw the owner of a day care center bring a number of children out of the center into his adjoining home and sexually abuse them. The record did not indicate, however, whether B.N. and K.N. were among those children. Plaintiffs claimed that these defendants were negligent per se because they had failed to report the abuse pursuant to Tex.Fam.Code 261.109(a), which requires any person who "has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse" to file a report with an investigative agency.

{¶ 41} As relevant here, the Supreme Court of Texas found that "B.N. and K.N. are within the class of persons whom the child abuse reporting statute was meant to protect, and they suffered the kind of injury that the Legislature intended the statute to prevent." Id. at 305. In so finding, the court noted:

{¶ 42} "A few courts in other jurisdictions have interpreted mandatory reporting statutes as intended to protect only the specific child the defendant suspects is being abused, not other potential victims of the same abuser. See *Curran v. Walsh Jesuit High School,* 99 Ohio App.3d 696, 651 N.E.2d 1028, 1030–31 (1995); *Marcelletti v. Bathani,* 198 Mich.App. 655, 500 N.W.2d 124, 127 (1993). It is unclear from the pleadings whether B.N. and K.N. were among the children whom defendants saw being abused. But whether or not *Curran* and *Marcelletti*'s analysis applies to the Texas reporting statute, B.N. and K.N. are within the protected class on the facts of this case. According to the pleadings, defendants saw Daniel Keller take some of the children enrolled in the day care center out of the center into an adjoining room of the Kellers' home and sexually abuse them. This gave defendants 'cause to believe' that the 'physical or mental health or welfare' of all the children attending the day care center—'not only the particular children they saw being abused on that occasion—'may be adversely affected by abuse or neglect.'" Id. at 306, fn. 5, quoting Tex.Fam.Code 261.109(a).

{¶ 43} The court of appeals and the board have attempted to distinguish *Perry* on the basis of some obvious language differences between the Texas statute and R.C. 2151.421. In particular, they point out that the Texas statute imposes a mandatory reporting duty on *any person* who has cause to believe that a child's

physical or mental health *may be adversely affected* by abuse or neglect. Despite these dissimilarities in the two statutes, we find *Perry* instructive to the extent that it relates to the issue of whether potential victims of the same abuser can be included within the protected class under a statute that imposes a mandatory duty to report the abuse of "a child." The board's position is that the statutory reporting duty in Ohio is necessarily imposed for the sole benefit of the identified abused child because R.C. 2151.421(A)(1)(a) contemplates a duty to report abuse of "a child." The board's essential supporting argument, with which the court of appeals agreed, is that the statute's initial reference to "a child" is controlling, despite any subsequent language. For purposes of this inquiry, the two statutes are sufficiently similar to merit a comparison, since the Texas statute also begins with a reference to "a child's" physical or mental health.[3]

{¶ 44} The proposition that emerges from all of the foregoing is rather simple and straightforward. The question of who is entitled to protection under R.C. 2151.421 in any given case depends on the circumstances and the relationships of the parties. In the typical case, the statute's mandatory reporting provisions will operate to protect only the specific child who is identified as abused because that child alone is in direct danger of further injury. But when the circumstances clearly indicate that there exists a danger of harm to another child from the same source and the reporter has an official or professional relationship with the other child, the statute does not withhold protection until such time as that child's personal security and bodily integrity are actually violated.

{¶ 45} Schoolteachers, school officials, and school authorities have a special responsibility to protect those children committed to their care and control. School officials and school authorities, in particular, have special relationships with their teachers and direct control of the environment in which their teachers and students interact. When these persons are informed that one of their schoolchildren has been sexually abused by one of their teachers, they should readily appreciate that all of their schoolchildren are in danger. In no other context would we give even a second thought to the proposition that a school board has an obligation to deal with an instrumentality of harm to one of its

---

3. However, the fact that the Texas statute imposes mandatory reporting requirements on all persons as opposed to R.C. 2151.421, which imposes such requirements only on certain officials and professionals having special relationships with children, does serve to distinguish the ultimate holding in *Perry*. The court in *Perry* ultimately concluded that it was inappropriate to adopt Tex.Fam.Code 261.109(a) as establishing a duty and standard of conduct in tort because it would impose liability "on a broad class of individuals whose relationship to the abuse was extremely indirect." *Perry*, 973 S.W.2d at 309. In so holding, the court specifically noted, "The Texas Family Code contains a separate mandatory reporting provision, *not relevant here*, specifically directed to members of certain professions. See Tex. Fam.Code § 261.101(b)." (Emphasis added.) Id. at 308, fn. 6.

students at school for the benefit of all of its students. It is irrational to suggest that the General Assembly intended to protect only the one specific minor student who is actually abused under these circumstances, and we will not interpret the statute so restrictively as to achieve an irrational result.

{¶ 46} Accordingly, we hold that pursuant to former R.C. 2744.02(B)(5), a board of education may be held liable when its failure to report the sexual abuse of a minor student by a teacher in violation of R.C. 2151.421 proximately results in the sexual abuse of another minor student by the same teacher.

{¶ 47} Based on all of the foregoing, the judgment of the court of appeals is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

F.E. SWEENEY, PFEIFER and O'CONNOR, JJ., concur.

O'DONNELL, J., concurs separately.

MOYER, C.J., and LUNDBERG STRATTON, J., dissent.

---

## O'DONNELL, J., concurring.

{¶ 48} While I concur with the majority's opinion, I write separately to point out that the record before us reveals that the school board, for the purposes of this appeal, concedes that school officials failed to report the alleged abuse of Amanda, in violation of R.C. 2151.421. The issue of whether R.C. 2151.421 was in fact violated, however, is an issue of fact that remains to be litigated on remand.

{¶ 49} The statute in question, R.C. 2151.421(A)(1)(a), provides in part that no statutorily designated person, "who is acting in an official or professional capacity and knows or suspects that a child under eighteen years of age * * * has suffered or faces a threat of suffering any physical or mental wound, injury, disability, or condition of a nature that reasonably indicates abuse or neglect of the child, shall fail to immediately report that knowledge or suspicion" to the appropriate authority.

{¶ 50} Pursuant to the plain language of that statute, the duty to report is triggered only when an official knows or suspects that a child has suffered or faces a threat of suffering any wound, injury, disability, or condition that reasonably indicates abuse or neglect. The determination regarding whether the duty to report arose is a question of fact. See, generally, *Sprouse v. Lucas Cty. Bd. of Edn.* (Mar. 12, 1999), Lucas App. No. L-98-1098, 1999 WL 128636 (concluding that a genuine issue of material fact existed as to whether the

teacher's conduct constituted abuse thereby triggering the school board's duty to report, pursuant to R.C. 2151.421). Accordingly, a student's report of sexual abuse may or may not trigger the duty to report, depending upon the circumstances of a particular case.

{¶ 51} Here, the issue of whether the principal had a duty to report Amanda's allegation of abuse remains to be litigated upon remand. We do know from the record before us that the principal, upon learning of the allegations, conducted an investigation, concluded that the allegations were unfounded, and, according to Amanda, expelled her from school. If school officials did not violate the reporting statute, then the board's immunity remains intact.

---

LUNDBERG STRATTON, J., dissenting.

{¶ 52} I respectfully dissent. I disagree with the majority's conclusion that the "question of who is entitled to protection under R.C. 2151.421 in any given case depends on the circumstances and the relationships of the parties." R.C. 2151.421 is intended to protect a specific child or specific children about whom a report of actual or suspected abuse is made. The judiciary should not expand the scope of the statute to create a duty to protect an unidentified class of third-party beneficiaries.

{¶ 53} Maltreatment of children is not a recent problem. The term "battered child syndrome" was first used in 1860. Marrus, Please Keep My Secret: Child Abuse Reporting Statutes, Confidentiality, and Juvenile Delinquency (1998), 11 Geo. J. Legal Ethics 509, 513. It was not until 1961 that a movement to alleviate the plight of mistreated children began in the United States. By 1967, all states had enacted some type of statute to report child abuse. The primary purpose of the legislation was to involve agencies in protecting abused children, the rationale being that children may not be able to protect themselves. Id. at 514.

{¶ 54} Ohio was one of the first states to codify a reporting statute, then known as "child-battering" legislation. Note, Ohio's Mandatory Reporting Statute For Cases of Child Abuse (1967), 18 W.Res.L.Rev. 1405. R.C. 2151.421, initially enacted in 1963, directed physicians and heads of medical institutions to report injuries that they suspected had been caused by physical abuse. Am.H.B. No. 765, 130 Ohio Laws 625–626. By 1965, Ohio had amended its statute to make reporting mandatory for other professionals in a position to detect child abuse. Am.H.B. No. 218, 131 Ohio Laws 632. This group included physicians, nurses, and others in close or frequent contact with children, such as teachers and social workers. Id.

{¶ 55} The focus of the current version of R.C. 2151.421 remains on identifying the child suspected of being abused. The statutory reporting procedures are directed toward helping that child. The statute requires that any written report identify the child and provide information related to the child and the injuries or suspected abuse. R.C. 2151.421(C). The report is referred to a children's services agency to investigate the child's situation and, if necessary, to protect the child who has been identified. R.C. 2151.421(D), (F), and (I). Law enforcement will cooperate in investigating the incidents reported. R.C. 2151.421(F), (I). Except in certain limited circumstances, the report remains confidential. R.C. 2151.421(H).

{¶ 56} Notably absent from R.C. 2151.421 is any direct provision for identifying, prosecuting, or punishing the abuser. The statute does not provide for notice to potential victims or public identification of the abuser. The intent of this statute is the protection of the child, not the punishment of the abuser; other criminal statutes authorize punishment.

{¶ 57} This court recognized the public policy behind R.C. 2151.421 in *Brodie v. Summit Cty. Children Serv. Bd.* (1990), 51 Ohio St.3d 112, 554 N.E.2d 1301. The *Brodie* court acknowledged the clear intention of the General Assembly in R.C. 2151.421 to "protect children from abuse and neglect and eliminate the source of any such abuse." Id. at 117, 554 N.E.2d 1301. The underlying issue in *Brodie* also involved breach of a legal duty under R.C. 2151.421, an agency's failure to investigate alleged abuse involving a particular child. The *Brodie* court refused to allow the agency to assert the defense of the public-duty doctrine because "the action required by the statute is not directed at or designed to protect the public at large, but intended to protect a specific child who is reported as abused or neglected." Id. at 119, 554 N.E.2d 1301.

{¶ 58} Here, the majority attempted to reconcile its opinion by distinguishing *Brodie* on its facts. However, the underlying public policy remains the same despite any factual distinctions between the cases. We reiterated this policy in *Campbell v. Burton* (2001), 92 Ohio St.3d 336, 750 N.E.2d 539, which involved a teacher's failure to report that a student had said she was being abused. Whether the situation involves the statutory duty to report suspected abuse or the duty to investigate reported abuse, the public policy underlying the statute remains the protection of the child who is the subject of the report.

{¶ 59} I believe that the appellate court correctly relied on *Curran v. Walsh Jesuit High School* (1995), 99 Ohio App.3d 696, 651 N.E.2d 1028. The facts in *Curran* are strikingly similar to those in this case. Curran claimed that he had been sexually abused by a high school teacher who had allegedly abused another student the previous year. Curran's high school had failed to report the earlier

instance of abuse. Curran's cause of action was based upon the high school's breach of duty for failure to report the previous alleged abuse.

{¶ 60} The appellate court held that Curran did not have standing to assert a claim against his high school for breach of duty under R.C. 2151.421 for its alleged failure to report the suspected sexual abuse of another student that occurred during a previous school year. Relying on *Brodie, Curran* held that R.C. 2151.421 is intended to protect individuals, not the public in general. The statute creates a duty owed solely to the minor child about whom reports have been received, not to unknown third parties. *Curran*, 99 Ohio App.3d at 700, 651 N.E.2d 1028.

{¶ 61} Other states with similar mandatory reporting statutes have refused to extend the duty owed beyond the specific child about whom a report is made. In *Ward v. Greene* (2004), 267 Conn. 539, 839 A.2d 1259, the Supreme Court of Connecticut held that a private child care placement agency that had failed to report suspected abuse by a day care operator did not owe a statutory duty to the mother of a child who was later killed by the same day care operator. Ward had argued that the duty applied to *all* children in the defendant's care. The court noted that Connecticut's reporting statutory scheme focused on individuals who already have been abused or neglected and should have been the subject of a mandated report. Similar to Ohio's statute, Connecticut's reporting statute focuses only on the abused child. The report and information gathered in the investigation are confidential. The court logically reasoned that "children other than the child who is the subject of a mandated report do not directly benefit from the reporting requirements." *Ward*, 267 Conn. at 555, 839 A.2d 1259. Were Connecticut's statutory scheme meant to protect children other than the subject child, the court reasoned, the statute would have made available information to the public about the reported abuse, or in the case of the day-care worker, to the parents or guardians of other children also in the care of that person. Id.

{¶ 62} The Utah Supreme Court held that Utah's mandatory reporting statute did not impose a duty upon the state or a county agency to warn parents of potential abuse by a day-care worker or to prevent future abuse by the worker. *Owens v. Garfield* (Utah 1989), 784 P.2d 1187. The court said that Utah's statute placed a duty upon the state and county "to protect children *who are identified to them* as suspected victims of child abuse." (Emphasis added.) Id. at 1192. The statute "can[not] be read to create a legally enforceable duty on the part of the [county] to protect all children from child abuse in all circumstances" because the "duty would be impossible to perform." Id. at 1191.

{¶ 63} I note that R.C. 2744.02(B)(5) was amended after this incident occurred. The amended statute restricts the meaning of "liability" by providing that "a political subdivision is liable for injury * * * when *civil* liability is expressly

imposed upon the political subdivision by a section of the Revised Code * * *." (Emphasis added.) 2002 Am.Sub.S.B. No. 106. I believe this textual change in R.C. 2744.02(B)(5) reflects the General Assembly's original intent. And because R.C. 2151.421 does not impose civil liability upon one who fails to report, I believe that the holding in this case has limited applicability.

{¶ 64} Child abuse is a problem with terrible implications. I am saddened by the tragic events that occurred here. However, I do not agree that R.C. 2151.421 imposes liability upon a school for the sexual abuse upon a minor student when that school has failed to report an earlier allegation of sexual abuse of another minor student by the same teacher. Ohio's statutory scheme is designed to protect a specific child or children about whom a report of abuse has been made. It focuses upon the abused child. I find it compelling that the statute provides no procedure for the reporting person to provide additional information about other children who may be in contact with the suspected abuser. Had the Mansfield Board of Education reported the prior instance of sexual abuse, no statutory notice mechanism would have informed parents of other students. Furthermore, there is the statute's confidentiality component. Because the report and subsequent investigation are confidential, it is likely that no other students or parents of students are made aware of previous incidents. Consequently, I do not believe that the statute was designed to protect children other than the child about whom a report is made.

{¶ 65} I believe the majority improperly expands the scope of Ohio's mandatory reporting statute and creates a duty that opens the door to a class of unidentified persons. It is not the role of the judiciary to create policy for the state or to extend the scope of a statute, particularly when the extension creates duties. Therefore, I would affirm the judgment of the court of appeals.

MOYER, C.J., concurs in the foregoing dissenting opinion.

———————

Robert J. Vecchio Co., L.P.A., Robert J. Vecchio and F. Peter Costello, for appellants.

Lutz & Oxley Co., L.P.A., Erin N. Cahill and Fred M. Oxley, for appellee.

Connelly, Jackson & Collier, L.L.P., and Anthony E. Turley, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

McCaslin, Imbus & McCaslin, L.P.A., R. Gary Winters and Ian R. Smith, urging affirmance for amicus curiae Nationwide Insurance Companies.

Law Offices of Nicholas E. Subashi, Nicholas E. Subashi and Lynnette Pisone Ballato, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.