OPINION
{¶ 1} Plaintiff-appellant, Justin A. Johnson, Sr., appeals a decision of the Butler County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Victoria Baldrick and Karen Johnson-Jordan. We affirm the decision of the trial court. *Page 2 
 {¶ 2} The instant action is the result of the death of a seven-month-old child, Justin Johnson, Jr. On the night of February 4, 2004, the child's mother, Aimee Leonard, was arguing on the phone with the child's father. Following the argument, Aimee set fire to the trailer-home. She left the child in the trailer and the child died from smoke inhalation.
 {¶ 3} Appellant brought an action against appellees, two employees of Butler County Children Services, for recklessly investigating reports that Aimee was abusing and/or neglecting Justin and failing to initiate child-protection proceedings in juvenile court. Appellees were granted summary judgment by the trial court.
 {¶ 4} Butler County Children Services first became involved with Aimee while she was still a minor. In June 1989, Aimee made a false allegation of sexual abuse against her father. At that time, children services compiled an evaluation of Aimee, finding that she had a limited IQ of 72 and, as a result, acted immature, and often displayed fits of anger and rage.
 {¶ 5} In December 1993, Aimee had her first child, Scott. On the day after the child's birth, children services received a report alerting that the nurses at the hospital "did not want to release the infant with Ms. Leonard due to her mental retardation and alleged violent episodes." Children services conducted a lengthy investigation finding that Aimee lacked the intellectual and emotional capacities to independently parent and protect a child, and that a child left in her care would be at a definite risk of harm. Children services also noted reports that Aimee acted abusively towards the child's father, broke out windows in their home, and intentionally flooded their apartment. In 1994, Aimee's parental rights for Scott were permanently terminated.
 {¶ 6} In September 1995, Aimee was charged with rape for engaging in sexual conduct with a 12-year-old boy. Aimee was convicted of gross sexual imposition and sentenced to two years in prison. *Page 3 
 {¶ 7} In January 2001, Aimee had her second child, Andrea. In May 2001, children services received a referral that Aimee was not providing Andrea with adequate nutrition. The agency conducted a full investigation on Aimee, reviewing Scott's case and reports furnished by the Middletown Police Department involving 55 reported incidents ranging "from juvenile offenses, domestic violence, assault, harassment to rape." The reports of children services stated that the child was "at risk" and that Aimee was not able to parent the child independently. When Andrea was 9 ½ months old, children services began proceedings to remove custody. Custody was permanently terminated on March 25, 2002.
 {¶ 8} Justin was born on June 28, 2003. In December, children services received an anonymous complaint of neglect concerning Aimee's treatment of Justin. Appellee, Karen Johnson-Jordan, assigned appellee, Victoria Baldrick, to investigate the complaint which alleged that Aimee "throws Justin into the crib and yells at him." On or around December 29, 2003, Baldrick met with Aimee and Aimee's mother at Aimee's home. Baldrick noted Aimee's past history[1] in the report. Despite these concerns, Baldrick reported that there was no evidence of the alleged complaint and Aimee denied the allegations. Baldrick further reported that no physical injuries were observed; Aimee had familial support;[2] Aimee responds appropriately to the baby; she has a strong bond with the baby; Aimee was very protective; Aimee appeared to understand the child's developmental stages; and Aimee "was very cooperative" and "seemed to accept responsibility."
 {¶ 9} According to an affidavit submitted by Johnson-Jordan, a "roundtable discussion" was conducted by children services to determine what action to take. Based on the evidence gathered, appellees believed there was an insufficient basis to remove Justin *Page 4 
from his mother's care due, in part, to the conclusion that Aimee was not experiencing any present-day mental health issues despite experiencing such issues in the past. Further, no referrals from any doctors involving Aimee had been made in the previous two years. According to Johnson-Jordan, she believed Aimee "had achieved more maturity with age and had taken steps to increase her parenting skills."
 {¶ 10} Appellant timely appeals, raising a single assignment of error:
 {¶ 11} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO BALDRICK AND JOHNSON-JORDAN."
 {¶ 12} Appellant argues in his sole assignment of error that the trial court erred by granting summary judgment to appellees and presents multiple issues for review. Appellant contends that the trial court erred in finding that appellees had no duty and were immune from suit based on the Ohio Political Subdivision Tort Liability Act. Further, appellant disagrees with the trial court's definition of "reckless." Ultimately, appellant argues a genuine issue of material fact exists regarding whether appellees recklessly conducted the investigation.
 Standard of Review {¶ 13} This court's review of a trial court's ruling on a motion for summary judgment is de novo. Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887. In reviewing a summary judgment, an appellate court must apply the standard found in Civ.R. 56. According to Civ.R. 56, a trial court should grant summary judgment only when: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but on conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. *Page 5 
(1978), 54 Ohio St.2d 64, 66.
 Analysis {¶ 14} The gravamen of the legal issues presented by appellant in his sole assignment of error involves the tension between the principles of duty and immunity.
 Duty {¶ 15} Appellant first argues that children services workers have an "actionable duty" to investigate reports of child abuse and, when appropriate, initiate child-protective services. Appellant argues that R.C. 2151.421(F) and Brodie v. Summit County Children ServicesBoard (1990), 51 Ohio St.3d 112, impose this duty.
 {¶ 16} R.C. 2151.421 governs the official reporting, investigation, and disposition of incidents of child abuse and/or neglect. The statute requires that whenever a suspected incident of child abuse or neglect is reported, an investigation must be commenced within twenty-four hours. R.C. 2151.421(F)(1). The authority and responsibility to conduct such investigations are vested solely with the public children services agency, in cooperation with law enforcement agencies. Id.
 {¶ 17} In Brodie, a guardian ad litem brought suit against a county children services board and caseworkers for allegedly failing or refusing to investigate reports of suspected child abuse or neglect.51 Ohio St.3d at 113. The Ohio Supreme Court held "that children services board and its agents have a duty to investigate and report their findings as required by R.C. 2151.421 * * *." Id. at 119.[3]
 {¶ 18} Appellees urge, however, that the Ohio Political Subdivision Tort Liability Act *Page 6 
abrogates the Brodie decision. The trial court in this case agreed with appellees' argument, finding that the "holdings in Brodie have been superceded by the enactment of R.C. 2744." Appellees' analysis and the trial court's decision on this issue are misguided. Appellees and the trial court conflate the distinct concepts of duty and immunity. Immunity does not extinguish a duty. Immunity serves to remove liability if the duty is violated. Despite our finding that the trial court's analysis is incorrect, our review is de novo and, for reasons discussed below, the trial court was correct in granting summary judgment.
 {¶ 19} R.C. 2151.421 clearly imposes a duty upon children services to investigate reports of known or suspected child abuse as noted inBrodie[4] Id. In Yates v. Mansfield Bd. of Edn., 102 Ohio St.3d 205,2004-Ohio-2491, the Ohio Supreme Court extensively examinedBrodie on the issue of duty pursuant to R.C. 2951.421.[5] Moreover, inMarshall v. Montgomery Cty. Children Serv. Bd., 92 Ohio St.3d 348,2001-Ohio-209, the Ohio Supreme Court reaffirmed that children services has "a duty pursuant to 2151.421 to investigate reports of known or suspected child abuse within twenty-four hours." Id. at 352.
 {¶ 20} The Political Subdivision Tort Liability Act does not extinguish appellees' duty. Rather, if it is determined that the Act immunizes appellees, it extinguishes their liability.
 Immunity {¶ 21} In this case, appellant alleges that appellees recklessly investigated the report of child abuse. Appellees urge that the Political Subdivision Tort Liability Act grants them immunity from the instant action. *Page 7 
 {¶ 22} R.C. 2744.03(A)(6)(b) expressly states that an employee of a political subdivision, acting in connection with his or her governmental or proprietary function, is immune from liability in any civil action for injury, death, or loss to person or property unless the "employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 23} Nevertheless, appellees claim that the Ohio Supreme Court Case of Marshall v. Montgomery Cty. Children Serv. Bd. insulates them from any liability in this case, including reckless actions. InMarshall, the estate of a child who was beaten to death by his mother brought a wrongful death action against the county, the county children services board, and caseworkers. 92 Ohio St.3d at 351. The estate alleged that appellee knew or should have known about the previous acts of violence perpetrated by the mother against her other children and that appellee negligently failed to investigate and failed to remove the child from the mother's custody. Id. The Ohio Supreme Court accepted review on the limited question of whether: "For the purposes of the immunity exceptions in R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c), does R.C. 2151.421 expressly impose liability on political subdivisions and their employees for failure to investigate child abuse?" Id. The court answered the question in the negative, finding that R.C. 2151.421
does not expressly impose liability on a children services board and their employees for failure to investigate reports of child abuse.
 {¶ 24} The application of Marshall is limited as it applies only to R.C. 2744.02(B)(5) and R.C. 2744.03(A)(6)(c), not R.C. 2744.04(A)(6)(b).Marshall only involves an allegation of negligence against the board. Further, R.C. 2744.02(A)(6)(b) expressly denies immunity for an employee's acts or omissions that were committed in a reckless manner.
 {¶ 25} We find Grimm v. Summit Cty. Children Serv. Bd., Summit App. No. 22702, 2006-Ohio-2411, persuasive on this issue. In Grimm, the plaintiff filed a complaint for personal injury against a hospital, the Summit County Children Service Board, and multiple *Page 8 
Children Services caseworkers. Id. at ¶ 3. The Grimm court recognized that the plaintiff could maintain an action against the employees of Children Services. Id. at ¶ 72. The court held that "an employee of a political subdivision may lose his immunity from liability if he acts or fails to act `with malicious purpose, in bad faith, or in a wanton or reckless manner.'" Id. Accordingly, appellees are not granted immunity by the Political Subdivision Tort Liability Act for reckless acts or omissions. See, also, Fabrey v. MacDonald Village Police Dept,70 Ohio St.3d 351, 356, 1994-Ohio-368; and Webb v. Greene County Sheriff'sOffice (S.D.Ohio 2007), 494 F.Supp.2d 779, 798.
 Recklessness {¶ 26} Next, Appellant disagrees with the trial court's holding that "recklessness under R.C. 2744.03(A)(6)(b) is not distinguishable from malice, bad faith or wantonness." The trial court based its holding on this court's decisions in Jackson v. Butler County Board of CityCommissioners (1991), 76 Ohio App.3d 448, 454, and Poe v. Hamilton
(1990), 56 Ohio App.3d 137, 138. The trial court held that "all of which suggest conduct more egregious than simple carelessness." Appellant argues that recklessness is a "distinct culpable mental state with a wholly distinct meaning from malice and bad faith, and is slightly — but crucially-distinct from wantonness." Appellant concedes that there is no evidence that appellees acted maliciously or in bad faith. Accordingly, we will only address appellant's argument in the context of wanton or reckless conduct.
 {¶ 27} Appellant argues that a difference exists between reckless and wanton conduct and the trial court erred by conflating these terms into a single standard. Appellant further contends that the trial court failed to apply the distinct definition for recklessness to the facts of the case.
 {¶ 28} This issue is well-settled in the state of Ohio. Ohio courts state that "an individual acts `recklessly' when he `does an act or intentionally fails to do an act which is in *Page 9 
his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable person to realize, not only that his conduct creates an unreasonable risk of recent physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" Hunter v. Columbus (2000),139 Ohio App.3d 962, 969, citing Lipscomb v. Lewis (1993),85 Ohio App.3d 97, 102.
 {¶ 29} Wantonness is also described as a "degree greater than negligence." Id. Wanton misconduct is the failure to exercise any care whatsoever. Fabrey at 356. "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." Id., citing Roszman v. Sammett (1971)26 Ohio St.2d 94. Such perversity must be under such conditions that the actor must be conscious that his conduct will in all probability result in injury. Id.
 {¶ 30} The trial court noted these definitions in its decision. Further, the Second Restatement of Torts states for recklessness that "conduct described in this section is often called `wanton or willful misconduct' both in statutes and judicial opinions. On the other hand, this phrase is sometimes used by courts to refer to conduct intended to cause harm to another." 2 Restatement of Law 2d, Torts (1965), at 587, Section 500.
 {¶ 31} Similarly, in Thompson v. McNeill (1990), 53 Ohio St.3d 102, the Ohio Supreme Court acknowledged that "[t]he term `reckless' is often used interchangeably with `willful' and `wanton.' Our comments regarding recklessness apply to conduct characterized as willful and wanton as well." Id. at footnote 1. See, also, Fabrey, 70 Ohio St.3d at 356.
 Summary Judgment {¶ 32} Although the issues raised by appellant regarding appellees' duty and the "reckless" predicate for nonimmunity have merit, to survive summary judgment appellant must still demonstrate that a genuine issue of material fact exists as to whether appellees *Page 10 
recklessly conducted the investigation. Appellant alleges that appellees recklessly conducted the investigation, failing to consider Aimee's "past assaultive behaviors" and assaults committed against Justin's father in reaching its conclusions. As support, appellant submits records of Aimee's criminal history, the records of Butler County Children Services' continuing involvement with Aimee for her other children, "numerous reports" of Aimee's abuse of Justin, and her convictions of disorderly conduct, domestic violence, and gross sexual imposition.
 {¶ 33} Generally, the issue of malice, bad faith, and wanton or reckless behavior is a question for the jury. Fabrey v. McDonald,70 Ohio St.3d at 356. However, the standard for demonstrating such conduct is high. Id.
 {¶ 34} After a review of the record, appellant has failed to demonstrate that a genuine issue of material fact exists regarding whether appellees recklessly conducted the investigation and failed to initiate proceedings in the juvenile court. Appellees conducted an investigation into the anonymous report. No phone number was left with the report for follow-up with the person making the report. Appellees were clearly aware of Aimee's background, including her criminal record, other children, and mental health issues. That information was included in the report. Children services conducted a "roundtable discussion" following the investigation. According to appellees, Aimee's previous history was considered in determining the risk level. Other than the unsubstantiated, anonymous report which children services investigated, there was no evidence of abuse or neglect to Justin, nor was there any evidence that Justin was in immediate danger. Based on the evidence gathered, appellees believed that there was insufficient basis to remove Justin from Aimee's care due, in part, to the conclusion that Aimee was not experiencing any present-day mental health issues despite such issues being present in the past. Such evidence does not support a finding of recklessness. *Page 11 
 {¶ 35} Accordingly, based on the evidence presented, no genuine issue of material fact exists and the trial court correctly granted appellees' motion for summary judgment.
 {¶ 36} Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] Baldrick noted that Aimee had two previous children that were removed from custody, that she sexually abused a 12-year-old, that she has a history of committing assault, and that she has mental health issues.
[2] Baldrick reported that Aimee's mother comes over every day and "her family is available if needed."
[3] The court in Brodie also considered whether qualified immunity protected the caseworkers from suit. The Ohio Supreme Court held that "officers or agents of a county children services bureau are immune from civil liability for the exercise of discretionary functions unless a plaintiff challenging the public officer's good faith can show that the official acted in willful, reckless or wanton disregard of rights established under law." Id. at 117. However, the facts of Brodie predate the enactment of the Political Subdivision Tort Liability Act and the trial court in this case decided that the Act superseded the entire case.
[4] See, also, Rich v. Erie County Dept. of Human Resources (1995),106 Ohio App.3d 88, 93; Douglass v. Salem Community Hospital,153 Ohio App.3d 350, 2003-Ohio-4006, ¶ 46; Hite v. Brown (1995),100 Ohio App.3d 606, 616; Grimm v. Summit County Children Services Bd., Summit App. No. 22702, 2006-Ohio-2411, ¶ 14.
[5] In Yates, the Ohio Supreme Court examined Brodie in the context of a school's duty to report sexual abuse of a student; recognizing thatBrodie remains controlling on the issue of duty for children services. However, the court factually distinguished Yates fromBrodie. *Page 1