{¶ 38} Respectfully, I dissent. The trial court should have denied the officers' motion for summary judgment, because there is an issue of fact regarding whether the officers' actions were wanton and reckless.
 {¶ 39} R.C. 2744.03(A)(6)(b) states that an employee of a political subdivision, acting in connection with his or her governmental or proprietary function, is immune from liability *Page 15 
in a civil action for injury, death, or loss to person or property unless "the employee's acts or omission were with malicious purpose, in bad faith, or in a wanton or reckless manner." (Emphasis added.) The statute is written in the disjunctive; clearly an employee can be liable if he or she acts either with malicious purpose, in bad faith, or recklessly. See, e.g., Johnson v. Baldrick, 12th Dist. No. CA2007-01-013, 2008-Ohio-1794, at ¶ 26 ("Appellant concedes that there is no evidence that appellees acted maliciously or in bad faith. Accordingly, we will only address appellant's argument in the context of wanton or reckless conduct.")
 {¶ 40} This conclusion is supported by the separate definitions for malicious purpose, bad faith, and recklessness in R.C. 2744.03(A)(6) enunciated by the Ohio Supreme Court. Because the standards are different for each, an individual's behavior could meet one definition, but not the others.
 {¶ 41} "As to whether conduct would reflect a malicious purpose, the Supreme Court has held that `malicious' means `indulging or exercising malice; harboring ill will or enmity.' Teramano v. Teramano (1966),6 Ohio St.2d 117, 118. Furthermore, `malice' can be defined as the willful and intentional design to do injury, or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. See Bush v. Kelley's, Inc. (1969), 18 Ohio St.2d 89.
 {¶ 42} "With respect to `bad faith,' the second standard enumerated in R.C. 2744.03(A)(6)(b), the Supreme Court, in Slater v. Motorists Mut.Ins. Co. (1962), *Page 16 174 Ohio St. 148, paragraph two of the syllabus, overruled on other grounds,Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552, 554, held that:
 {¶ 43} `* * * [B]ad faith, although not susceptible of concrete definition, embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.'
 {¶ 44} "Finally, an individual acts in a `reckless' manner ?`if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'" Thompson v. McNeill (1990), 53 Ohio St.3d 102,104-105, quoting 2 Restatement of the Law 2d Torts (1965), at 587, Section 500." Jackson v. Butler Cty. Bd. of Commrs., 12th
Dist. No. CA91-01-005, 76 Ohio App.3d 448, 454.
 {¶ 45} Here, the district court found that the officers were acting in good faith and without a malicious purpose. But it made no finding whatsoever regarding whether the officers' conduct was wanton or reckless. Hence, despite the majority's conclusion otherwise, the doctrine of collateral estoppel does not bar a finding in this case that the officers' conduct was wanton and reckless. *Page 17 
 {¶ 46} Furthermore, although the majority concludes that it "do[es] not see how [it] could" find the officers' actions be wanton or reckless in light of the district court's finding of good faith and lack of maliciousness, the evidence in this case, construed in a light most favorable to appellants (which we must do when considering appellees' motion for summary judgment), clearly creates an issue of fact as to whether the officers' conduct was wanton or reckless.
 {¶ 47} The district court opinion set forth appellant's deposition testimony as follows:
 {¶ 48} "Plaintiff testified that, after she and her husband entered their truck, a blue Ford Taurus `came screeching around a corner,' sped up alongside of them, and `suddenly he just pulled in front and cut us off at an angle.' She further testified that a `crazed-looking man' in `scruffy clothes' and jeans jumped out of the Taurus, pointed a gun at the Ferrantes, and began screaming for them to `get out of the f — ing truck.' Plaintiff testified that defendant Peters did not identify himself as a police officer and neither defendant used their emergency lights or sirens when approaching the truck.
 {¶ 49} "Plaintiff and Mr. Ferrante testified that she and her husband were terrified, in shock, and not knowing that the `crazed-looking man' (i.e., defendant Peters) was a Cleveland Police Officer, believed that their lives were in danger. They testified repeatedly that all they could see was a gun `as big as a cannon' pointed straight at them. When defendant Collier's marked cruiser pulled in behind their truck, Mr. Ferrante believed that *Page 18 
Officer Collier was there to subdue defendant Peters and became fearful that they (the Ferrantes) would be caught in the crossfire.
 {¶ 50} "Rather than complying with defendants' command to exit the truck, Mr. Ferrante slumped down and pushed plaintiff onto the floor of the truck, so that they would be out of the gun's line of fire. Mr. Ferrante then said to his wife, "I don't know what to do." Plaintiff testified that she responded, `Start the car before he kills us.' Mr. Ferrante then started the truck. Both plaintiff and Mr. Ferrante testified that, prior to Mr. Ferrante putting the truck in reverse, `bullets started flying,' as defendants fired shots directly at them. One of the bullets shot out the truck's rearview mirror." Ferrante v.Peters (Mar. 4, 2004) N.D. Ohio No. 1:02CV1333. (Internal citations omitted.)
 {¶ 51} The officers' failure to identify themselves as police officers and their shooting at the Ferrante's truck before it began moving could be considered reckless behavior, especially because the officers both testified that they did not observe Mr. Ferrante with a gun or anything else in his hands, and did not observe him doing anything illegal. Furthermore, it is unclear why the officers were dispatched to the house in the first place. Presswood's 911 report was nothing more than that he saw a gun, but it is not a crime in Ohio for an individual to hold a gun or even put a gun in a truck. At no point in these proceedings has the State articulated any crime the Ferrantes had allegedly committed. Despite the district court's conclusion that the officers were acting in good faith and without malice in a situation that "rapidly evolved and escalated over an extremely short time *Page 19 
period," if the Ferrantes' testimony is believed, it appears that the officers themselves contributed to the dangerous escalation of the situation by pulling their guns on individuals who had not committed any crime and then failing to identify themselves as police officers. Such behavior could clearly be considered reckless.
 {¶ 52} Because the district court's finding that the officers acted in good faith and without malice did not address the reckless standard for qualified immunity under R.C. 2744.03(A)(6)(b), and because appellant presented sufficient evidence to create a genuine issue of material fact regarding whether the officers were reckless, and therefore not entitled to immunity, I would reverse the trial court's judgment and remand for trial. *Page 1