DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendants-Appellants/Cross-Appellees Summa Health System and Akron City Hospital have appealed from the judgment of the Summit County Court of Common Pleas that denied its motion for judgment notwithstanding the verdict, or in the alternative, a new trial. This Court affirms.
 {¶ 2} Plaintiff-Appellee/Cross-Appellant Shenna Grimm has appealed from the judgment of the Summit County Court of Common Pleas that granted directed verdicts in favor of the Summit County Children Services Board and three CSB employees: Mark Cernoia, Lori Testa and Sabrina Sypherd. This Court affirms.
 I {¶ 3} On August 30, 2002, Plaintiff-Appellee/Cross-Appellant Shenna Grimm ("Grimm") filed a complaint for personal injury against DefendantsA-ppellants/Cross-Appellees Summa Health System and Akron City Hospital ("Summa"). The complaint included the Summit County Children Services Board ("CSB"), the CSB's executive director, Grimm's stepfather John Goff, and several John Does as defendants. Grimm filed a first amended complaint on September 15, 2003, dismissing CSB's executive director and identifying the John Doe defendants as CSB employees Mark Cernoia, Lori Testa, and Sabrina Sypherd.
 {¶ 4} Summa, CSB, and the named CSB employees filed motions for summary judgment. The trial court denied the motions on August 30, 2004. The matter proceeded to a jury trial on March 14, 2005. At the close of Grimm's case in chief, CSB and CSB's employees moved the court for directed verdict. On March 18, 2005, the court granted a directed verdict in favor of CSB and its employees and dismissed the case against those parties on the merits and with prejudice. On March 18, 2005, the jury returned a verdict in favor of Grimm against Summa in the amount of $224,000. On March 21, 2005, the trial court entered a final judgment against Summa in the amount of $224,000.
 {¶ 5} On March 25, 2005, Summa filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. Grimm replied in opposition. A hearing on the matter was held on April 22, 2005 and on May 2, 2005, the trial court entered an order denying Summa's motion.
 {¶ 6} Summa has timely appealed this order, asserting three assignments of error. Grimm has cross-appealed, asserting three cross-assignments of error.
 II Summa's First Assignment of Error
"THE TRIAL COURT ERRED IN OVERRULING THE SUMMA DEFENDANTS' MOTIONS FOR A DIRECTED VERDICT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT."
 {¶ 7} In its first assignment of error, Summa has argued that the trial court improperly denied its motions for a directed verdict and judgment notwithstanding the verdict ("JNOV"). Specifically, Summa has posited three arguments. First, Summa has argued that Grimm's expert failed to identify the standard of care, any breach thereof, or any resulting damages from the breach with the requisite degree of certainty. Second, Summa has argued that the jury's award of $224,000 in damages was unsupported by the evidence. Finally, Summa has argued that Ohio's child abuse reporting statute, R.C. 2151.421, does not apply to corporations, and furthermore, Summa cannot be held liable under the doctrine of respondeat superior because Grimm did not establish that any Summa employee had violated the statute. We disagree.
 {¶ 8} Before reaching Summa's arguments, we must define the appropriate standard of review. This court has held that "[a] motion for a directed verdict does not present a question of fact, but instead presents a question of law, even though in deciding such motion it is necessary to review and consider the evidence." Brooks v. Lady Foot Locker, 9th Dist. No. 22297,2005-Ohio-2394, at ¶ 6, citing Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, paragraph one of the syllabus. Accordingly, this Court reviews a trial court's decision to grant or deny a directed verdict de novo. Gugliotta v. Morano,161 Ohio App.3d 152, 2005-Ohio-2570, at ¶ 30. A motion for a directed verdict challenges the sufficiency of the evidence presented at trial. Whitaker v. M.T. Automotive, Inc. 9th Dist. No. 21836,2004-Ohio-7166, at ¶ 32. That said, "[a] civil judgment is based upon sufficient evidence if it is supported by some competent, credible evidence going to all the essential elements of the case." Vance v. Rusu, 9th Dist. No. 20841, 2002-Ohio-2096, at ¶ 9, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 9} An appellate court should affirm the trial court's decision to grant a directed verdict if "`when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party.'" Brooks at ¶ 6, quoting Pusey v. Bator (2002), 94 Ohio St.3d 275, 278. See Civ.R. 50(A)(4). This Court has held that when reviewing the "reasonable minds" portion of Civ.R. 50(A)(4), "the court is only required to consider whether there exists any evidence of probative value in support of the elements of the nonmoving party's claim." Brooks at ¶ 9 (emphasis added). Accordingly, denial of a motion for directed verdict is proper if the nonmoving party presents "any" competent, credible evidence which supports the essential elements of the nonmoving party's claim.
 {¶ 10} Furthermore, trial courts are required to apply the same test when ruling on a motion for JNOV as when ruling on a motion for directed verdict. Posin v. A.B.C. Motor Court Hotel
(1976), 45 Ohio St.2d 271, 275. Accordingly, an appellate court "employs the standard of review applicable to a motion for a directed verdict." Rondy, Inc. v. Goodyear Tire Rubber Co., 9th Dist. No. 21608, 2004-Ohio-835, at ¶ 5, citing Posin,45 Ohio St.2d at 275. With the foregoing principles in mind, we now address each of Summa's arguments.
A. Grimm's expert failed to identify the standard of care, anybreach thereof, or resultant damages with the requisite degree ofcertainty.
 {¶ 11} In its first argument, Summa has contended that evidence of recognized or suspected child abuse and any damages resulting from Summa's delay in reporting suspected abuse must be established by expert testimony to the requisite degree of medical certainty. Summa's argument is flawed.
 {¶ 12} The medical standard proffered by Summa applies only in cases asserting medical malpractice where the quality of medical care is at issue. Appellee has made no such claims in this case. Rather, Grimm's claim is grounded in ordinary negligence. She has alleged that Summa's failure to immediately report suspected child abuse caused her damage.
 {¶ 13} It is black letter law that actionable negligence requires a duty, a breach of the duty and resultant proximate damages. Menifee v. Ohio Welding Products, Inc. (1984),15 Ohio St.3d 75, 77. It is axiomatic that "[a] violation of a statute which sets forth specific duties constitutes negligence perse." Shroades v. Rental Homes (1981), 68 Ohio St.2d 20, 25. In such cases, the statutory duty supplants the reasonable person duty of care. Sikora v. Wenzel (2000), 88 Ohio St.3d 493, 496. In Sikora, the Ohio Supreme Court held "[i]n situations where a statutory violation constitutes negligence per se, the plaintiff will be considered to have conclusively established that the defendant breached the duty that he or she owed to the plaintiff." (Quotations omitted). Id. However, negligence per se is not "liability per se." (Quotations omitted). Id. This is because a plaintiff must still prove the elements of causation and damages. Id. Furthermore, "in order to maintain a claim of negligence per se based on the defendant's violation of a statute, the plaintiff must show that he is among the class of individuals that the statute is designed to protect[.]" Curranv. Walsh Jesuit High School (1995), 99 Ohio App.3d 696, 700.
 {¶ 14} It is clear that the child abuse reporting statute, R.C. 2151.421, sets forth specific duties. R.C. 2151.421 requires health care professionals (such as doctors, registered nurses, and licensed practical nurses) and other non-medical service providers (such as day care workers) to immediately report any knowledge or suspicion of abuse or neglect of a child. It is equally clear that R.C. 2151.421 was enacted to protect abused children. See Brodie v. Summit Cty. Children Services Bd.
(1990), 51 Ohio St.3d 112, 119 (holding that R.C. 2151.421 is not designed to protect the public at large, but to protect a specific child who is reported as abused or neglected). Because Grimm was a minor child on September 4-6, 1999, R.C. 2151.421
operated to protect her, and if the duties therein were violated by any Summa employee, such violation constituted negligence per se.
 {¶ 15} We must determine whether proof of breach of duty, proximate cause, and damages required expert testimony. This Court has held that "expert testimony is not required in a negligence action involving conduct within the common knowledge and experience of jurors." Woodham v. Elyria Memorial Hospital
(July 5, 2001), 9th Dist. No. 00CA007736, at 4, citing Ramage v.Cent. Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 103.
 {¶ 16} We hold that whether any Summa employee knew or suspected child abuse is a matter within the common knowledge and experience of lay jurors. R.C. 2551.421 imposes a duty to report upon persons who provide medical and non medical services. Day care providers are included within the statute. Would Appellant argue that expert testimony to a degree of medical certainty would be necessary to establish that a day care provider knew or suspected child abuse? Would Appellant argue that an expert in day care must proffer an opinion on the circumstances under which a day care worker should recognize and/or suspect abuse? We think not. If yes, to what degree of certainty — day care certainty? Factual issues of knowledge, purpose, or state of mind are routinely determined by juries without expert testimony. We see no difference between such customary fact finding and the fact finding required by R.C. 2551.421. Therefore, we find that no expert testimony was required in order to find a breach of the duty to report.
 {¶ 17} Our conclusion is the same on the issues of proximate cause and damages. Just as the emotional impact on a mother who witnesses the death of her child is within the common knowledge and experience of a lay juror, so too, we think that the emotional impact on a 17 year old girl left alone with her abuser and the chilling effect of his presence is a matter reasonably within the grasp of the lay juror.[1]
 {¶ 18} Summa has cited Landeros v. Flood (Cal. 1976),551 P.2d 389 as persuasive authority in support of its argument.Landeros is a medical malpractice case. In Landeros, the Supreme Court of California stated that the diagnosis of battered child syndrome was an accepted medical diagnosis included within the standard of care in medical malpractice cases. Id. at 393. The court went on to hold that whether the particular doctor in question violated a medical standard of care was a question of fact to be decided on the basis of expert testimony unless such conduct fell within the common knowledge of a layperson. Id. at 394. Thus, Landeros did not abrogate the "common knowledge" principle upon which this court relies.
 {¶ 19} The issue in Landeros was whether the doctor was negligent in failing to diagnose battered child syndrome for the purpose of a reporting statute that was ambiguous regarding the necessary state of mind of the doctor. The statute arguably required a report only when the physician actually observed the physical injury and formed the subjective opinion that the injuries were intentionally inflicted. The statute at issue was subsequently amended and clarified to mandateeporting, as in Ohio, in cases where abuse was known or suspected. See Ann.Cal.Penal Code § 11160(a)(2).
 {¶ 20} Moreover, despite its reference to expert testimony and medical diagnosis of battered child syndrome, Landeros
affirmed longstanding hornbook law that a person's state of mind (such as suspicion of sexual abuse) may properly be inferred from circumstantial evidence. The Landeros court stated:
"This does not mean, of course, that plaintiff can meet her burden only by extracting damaging admissions from [the defendant]. `The knowledge a person may have when material to an issue in a judicial proceeding is a fact to be prove[d] as any other fact. It differs from physical objects and phenomena in that it is a state of mind like belief or consciousness and cannot be seen, heard or otherwise directly observed by other persons. It may be evidenced by the affirmative statement or admission of the possessor of it. If he is silent or, says he did not have such knowledge, it may be evidenced in other ways, i.e., by circumstantial evidence and the inferences which the trier of fact may draw therefrom. (Citation omitted) Plaintiff will therefore be entitled to introduce proof of facts alleged in her complaint as circumstantial evidence that defendant possessed the requisite state of mind, and any conflict between such evidence and direct testimony of will be for the trier of fact." Landeros, 551 P.2d at fn 13.
 {¶ 21} In this case, the testimony of hospital staff and the content of the medical records reflect that Summa employees had cognizable factual suspicions that Grimm was or could be an abused child and that they failed to make a timely report to CSB.[2] Given such a suspicion of abuse, the duty to report was triggered and failure to adhere to that duty imposed negligence per se.
 {¶ 22} Summa's first argument lacks merit.
B. The jury award was unsupported by the evidence.
 {¶ 23} In its second argument, Summa has contended that there was no evidence of any injury, physical or otherwise, sustained by Grimm between September 4, 1999 (when she was admitted to Akron City Hospital) and September 6, 1999 (when CSB was contacted) and that the jury award was therefore improper and JNOV should have been granted. We disagree
 {¶ 24} We begin our analysis by noting that a trial court should "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." (Quotations omitted). Edwards v. Haase (Aug. 1, 2001), 9th Dist. No. 3121-M, at 5. Further, this court has stated that "[a] court should be hesitant to set aside a jury's verdict which is supported by credible proof in the absence of passion or prejudice as it is not for the court to substitute its judgment for that of the trier of fact." March v. Associated Materials,Inc. (Nov. 3, 1999), 9th Dist. No. 19413, at 7-8. See alsoVillella v. Waikem Motors, Inc. (1989), 45 Ohio St.3d 36, 40;Burns v. Krishnan (January 28, 1998), 9th Dist. No. 96CA006650, at 9. Accordingly, "a motion for judgment notwithstanding the verdict * * * is not often granted." Burns at 9.
 {¶ 25} We do not agree with Summa's assessment that there was no evidence of injury. There is direct evidence that Goff was in the delivery room, was seen in Grimm's hospital room while she was naked, that he kept the circular privacy curtain closed, and that he was present while Grimm was breastfeeding. Moreover, Grimm testified as to having nightmares and to the emotional consequences of having been raped by Goff. Julie Ainslie, Grimm's counselor, testified that Grimm's nightmares, flashbacks, depression, and heightened sense of danger are all indicative of post traumatic stress disorder. For example, Grimm testified that she has nightmares of Goff raping and beating her. She testified that some nights, she wakes up and she thinks that her fiancé is Goff. Grimm testified that these nightmares and flashbacks cause her to get out of bed and wander the apartment until her fiancé discovers her missing and consoles her. Only then, Grimm testified, does she feel safe: "I'm okay. I'm safe. I'm not in the presence of John." This Court finds Grimm's testimony to be further evidence that simply being in Goff's presence was emotionally damaging to Grimm
 {¶ 26} Such evidence is sufficient to take the issue of damages to the jury. The jury that found Goff guilty of rape in this case was in the best position to conclude whether or not Goff's omnipresence at the hospital caused or exacerbated emotional damages and the appropriate monetary compensation.
 {¶ 27} Summa has argued that expert testimony was required on the issue of damages.[3] Notwithstanding Summa's argument regarding the need for expert testimony, as we previously discussed, "expert testimony is not required in a negligence action involving conduct within the common knowledge and experience of jurors." Woodham at 4, citing Ramage,64 Ohio St.3d at 103. Appellant does not contest the jury finding in this case that Goff was guilty of rape and that he was the father of Grimm's child. It is within the common knowledge and experience of these jurors to also find that Summa's failure to report suspected abuse subjected Grimm to unnecessary exposure to her abuser and that such exposure caused emotional damage.
 {¶ 28} We have held that "[i]n a jury trial, matters of credibility of witnesses are primarily for the trier of fact; therefore, we must give deference to the jurors' judgment."Emerson Family Ltd. Partnership v. Emerson Tool, LLC, 9th Dist. No. 21382, 2005-Ohio-1630, at ¶ 13, citing State v. Lawrence
(Dec. 1, 1999), 9th Dist. No. 98CA007118, at 13. We see no reason to upset the jury's verdict in the instant matter.
Summa's second argument lacks merit.
C.R.C. 2151.421 does not apply to corporations andfurthermore, Summa is not liable under the doctrine of respondeatsuperior.
 {¶ 29} Summa has argued that R.C. 2151.421 is a criminal statute and therefore applicable only to individuals, not corporations. While R.C. 2151.421 couches the duty to report in terms of individual responsibility, we disagree with Summa's contention that a corporation cannot be held responsible for the failure of its employees to report.
 {¶ 30} As we have already discussed, a violation of R.C.2151.421 constitutes negligence per se. It has long been held that an employee's negligence may be imputed to an employer through the doctrine of respondeat superior. See, e.g., Berdyckv. Shinde (1993), 66 Ohio St.3d 573, 578, citing Klema v. St.Elizabeth's Hosp. of Youngstown (1960), 170 Ohio St. 519, 525
(holding under the doctrine of respondeat superior, a hospital is liable for the negligent acts of its employees). R.C. 2151.421
does not alter this doctrine. Therefore, this Court concludes that under R.C. 2151.421, an employee's liability for failure to report may be imputed to the employer under the doctrine of respondeat superior.
 {¶ 31} The record indicates that Summa employees had articulable suspicions that Grimm was an abused child. While no employee took the stand and admitted to actually suspecting abuse, such testimony is not required. Multiple nurses charted events that were out of the ordinary and consistent with a history of sexual abuse. This Court finds that the "oddities" and "irregularities" identified by Summa employees and documented in Grimm's medical chart constitute recognizable and articulable suspicions sufficient to trigger the duty to notify CSB under the mandate of R.C. 2151.421.
 {¶ 32} For instance, Cathy Knorzer, the nurse who admitted Grimm, noted on Grimm's chart that Grimm desired Goff to be named as the baby's father on the birth certificate. She also noted that Grimm verbalized having a history of depression since being raped at age ten. Knorzer also testified that Grimm had a flat affect — a sign of possible depression. While not admitting to an actual suspicion, Knorzer admitted that the situation seemed odd enough to warrant flagging Grimm's chart for a social services consult.
 {¶ 33} Denise Redovian, a Summa nurse, testified from her notes in Grimm's chart that she observed inappropriate behavior, such as Grimm being naked in Goff's presence and that such behavior was odd and inappropriate enough to contact Grimm's attending physician. Redovian denied having knowledge of the paternity and birth certificate issues when she made the notation, but this Court notes that the information had been charted and was available. We have reviewed Grimm's medical records and have verified that the staff concerns were documented in Grimm's chart.
 {¶ 34} Redovian also testified that just because a mother has a flat affect does not mean she has been the victim of sexual abuse. While we agree with that assessment, Redovian's attempt to explain Grimm's flat affect as possible post partum depression is unconvincing as the record indicates that Grimm's chart contained information regarding Grimm's history of depression, rape, and flat affect before the birth of her child.
 {¶ 35} Further, Summa social worker Sue Tarbis' notes reveal that nurses had been concerned with Goff's behavior; including inappropriate comments during delivery, watching Grimm walk around her room while disrobed, and being present during breastfeeding instruction.
 {¶ 36} As to the issue of proximate cause, we do not profess to know that had Knorzer or another Summa employee immediately contacted CSB as required by the statute, further contact between Grimm and Appellant would have been prevented during her hospitalization. That determination was for the jury to make by a preponderance of the evidence. We find that the jury had sufficient credible evidence upon which to base its verdict and we defer to the jurors' judgment. We further note that Summa did not seek to clarify the jury's general verdict by submission of specific jury interrogatories on the issue of proximate cause or any other essential element of the case.
 {¶ 37} As to the award of monetary damages, as noted above, we hold that such a determination is within the common knowledge and experience of a layman. See Section B supra. The jury award does not evidence improper bias or passion and because no jury interrogatories were propounded it is impossible for this Court to know precisely how the jury arrived at its decision. Therefore, we cannot find that the damages award is legally flawed. See Patio Enclosures, Inc. v. Four Seasons MarketingCorp., 9th Dist. No. 22458, 2005-Ohio-4933, at ¶ 47.
D. Conclusion
 {¶ 38} We find that the trial court's denial of Summa's motions for directed verdict and judgment notwithstanding the verdict was proper because there existed sufficient evidence upon which reasonable jurors may reach different conclusions concerning Summa's liability. See Whitaker at ¶ 32. Moreover, it is not clear to this Court that the jury reached a seriously erroneous result and therefore, it was proper for the trial judge to abstain from interfering with the verdict. Prince v. Jordan,
9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶ 35.
 {¶ 39} Summa's first assignment of error lacks merit.
 Summa's Second Assignment of Error
"THE TRIAL COURT ERRED IN DENYING THE SUMMA DEFENDANTS' MOTION FOR A NEW TRIAL."
 {¶ 40} In its second assignment of error, Summa has argued that the trial court erred in denying its motion for a new trial. Specifically, Summa has argued that a new trial was appropriate based on the following grounds: 1) the damages are excessive or inadequate and appear to have been given under the influence of passion or prejudice; 2) the judgment is not sustained by the weight of the evidence; 3) the judgment is contrary to law; or 4) for any other reason in the sound discretion of the court for good cause shown. We disagree.
 {¶ 41} This Court has held that a "trial court is afforded broad discretion in its determination of the propriety of a new trial pursuant to Civ.R. 59." Patio Enclosures at ¶ 56, citingSharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312. Accordingly, this Court reviews a trial court's ruling on a motion for a new trial for an abuse of that discretion. Id. In the context of the disposition of a motion for a new trial, an abuse of discretion "implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." Cooperider v.Parker, 9th Dist. No. 02CA0065-M, 2003-Ohio-4521, at ¶ 29. Further, when applying the abuse of discretion standard we cannot substitute our judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 42} Summa has argued that pursuant to Civ.R. 59(A)(4), a new trial should have been awarded on the grounds of excessive damages that appear to be the product of passion or prejudice. Summa has argued that the complete lack of evidence supporting the jury verdict was "so overwhelmingly disproportionate as to shock reasonable sensibilities." (Citations omitted). Prince at ¶ 20.
 {¶ 43} As discussed above, this Court found Summa's argument concerning the complete lack of evidence supporting the jury verdict to be unpersuasive. See Summa's First Assignment of Error, section B, supra. Accordingly, we chose not to disturb the jury verdict. We further decline to conclude that the verdict against Summa was so overwhelmingly disproportionate as to shock our sensibilities. The jury found damages against Goff for the rape that resulted in Grimm's pregnancy in the amount of $4,110,000. The jury verdict against Summa was for $224,000. The jury award against Summa was not so disproportionate as to evidence bias, passion or an arbitrary and punitive mindset. Finally, as noted above, no jury interrogatories were submitted, and therefore it is impossible for this Court to determine on what evidence the jury based its decision or if any passion or prejudice did in fact contribute to the verdict. See PatioEnclosures at ¶ 47.
 {¶ 44} Next, Summa has argued that a new trial should have been granted because the judgment was not sustained by the weight of the evidence. Specifically Summa has argued that there was no evidence presented of any damage resulting from Summa's failure to immediately report the suspected abuse. Given our disposition of Summa's First Assignment of Error, this argument is unpersuasive. See Summa's First Assignment of Error, supra; App.R. 12(A)(1)(c).
 {¶ 45} Next Summa has argued that a new trial should have been granted because the judgment was contrary to law in that no expert testimony was presented to establish the standard of care, a breach of that standard, or any damages proximately resulting from the breach. Given our disposition of Summa's First Assignment of Error, we find this argument unpersuasive. See Summa's First Assignment of Error, section A supra; App.R. 12(A)(1)(c).
 {¶ 46} Finally, Summa has argued that under the totality of circumstances outlined in its brief, that a new trial should have been awarded in the sound discretion of the court for good cause shown pursuant to Civ.R. 59(A). Summa has not developed its argument beyond "[g]iven the totality of the circumstances herein, a new trial was called for" and thereby does not establish good cause.
 {¶ 47} Based on the foregoing, we find that the trial court did not abuse its discretion when it denied Summa's motion for a new trial. This Court cannot say that the trial court acted unreasonably, arbitrarily or unconscionably in reaching its decision.
 {¶ 48} Summa's second assignment of error lacks merit.
 Summa's Third Assignment of Error
"THE TRIAL COURT ERRED IN PERMITTING PLAINTIFF'S COUNSEL TO REFER IN CLOSING ARGUMENT TO THE "THREE FINGERS" COMMENT ALLEGEDLY MADE BY PLAINTIFF'S STEPFATHER IN THE DELIVERY ROOM, WHERE THERE WAS NO EVIDENCE THAT ANY SUMMA EMPLOYEE WAS AWARE OF THAT ALLEGED REMARK."
 {¶ 49} In its third assignment of error, Summa has argued that the trial court improperly allowed Grimm's counsel to make reference, during his closing statement, to a comment allegedly made by Goff while in the delivery room. Specifically, Summa has argued that Grimm never adduced any testimony that any Summa employee was aware of the "three finger" comment, that the comment was far removed hearsay and that the trial court even admonished Grimm's counsel that the "three finger" comment was not in evidence. We disagree that allowing the comment constituted reversible error.
 {¶ 50} Initially, this Court notes that that "closing arguments are not evidence[.]" State v. Thomas, 9th Dist. No. 22340, 2005-Ohio-4265, at ¶ 26, citing State v. Frazier (1995),73 Ohio St.3d 323, 338, certiorari denied (1996), 516 U.S. 1095,116 S.Ct. 820, 133 L.Ed.2d 763. See also Jemson v. Falls VillageRetirement Community, Ltd., 9th Dist. No. 20845, 2002-Ohio-4155, at ¶ 23 (noting that closing arguments are not evidence in a civil context). We also note that immediately prior to closing arguments, the trial court explicitly instructed the jury that the arguments they were about to hear were not evidence. The court admonished the jury that they were not to treat the arguments as evidence. The court even went so far as to inquire of the jury whether his instruction was "clear enough."
 {¶ 51} Furthermore, "it is presumed that a jury will obey the trial court's instruction." Austin v. Kluczarov Constr., 9th Dist. No. 02CA0103-M, 2004-Ohio-593, at ¶ 13. Therefore, because the trial court properly instructed the jury, and it is presumed that the jury heeded the trial court's instructions, we find that Summa has not shown that the jury considered Grimm's closing remarks as substantive evidence. See In re J.R., 9 Dist. No. 04CA0066-M, 2005-Ohio-4090, at ¶ 29. Moreover, "[h]aving no reason to believe that the jury would not accept the court's admonition, we find neither error nor prejudice in the trial court's action." Austin at ¶ 13.
 {¶ 52} Additionally, Summa failed to object to the alleged prejudicial remark during closing argument, and, therefore, has waived all but plain error. See Koczan v. Graham (Sept. 27, 2002), 9th Dist. No. 98CA007248, at 15. "Plain error occurs when, but for the error, the outcome of the trial clearly would have been otherwise." Isquick v. Adams, 9th Dist. No. 20839, 2002-Ohio-3988, at ¶ 23. When applying the plain error doctrine in a civil case, this Court must "`proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice[.]'" Id., quotingGoldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121.
 {¶ 53} This Court is not persuaded that a failure to apply the plain error doctrine in this civil case would create a manifest miscarriage of justice. During his closing, Grimm's counsel stated:
"And as we learned later on, the comment about the three fingers took place on the 4th. They all knew that on the 4th."
 {¶ 54} Summa has failed to prove that this comment was prejudicial. First, because no interrogatories were presented, this Court has no way of knowing whether this comment contributed to the jury's finding that Summa was liable for failing to report suspected or known child abuse. See Patio Enclosures at ¶ 47. Second, this Court has recently held that "[t]he improper conduct of an attorney during closing argument does not rise to the level of being prejudicial unless the improper conduct is pervasive and repetitive[.]" Thomas at ¶ 26. The record is clear that the aforementioned statement is the sole reference in Grimm's closing argument to the "three finger" comment. We fail to see how this comment so greatly prejudiced Summa as to create a manifest miscarriage of justice. Third, Summa has failed to establish how, absent the alleged plain error, the outcome of the trial would have clearly been otherwise.
 {¶ 55} Based on the foregoing, we find that the trial court did not commit plain error when it allowed Grimm's counsel to refer to the alleged "three finger" comment during his closing argument.
 {¶ 56} Summa's third assignment of error lacks merit.
 III {¶ 57} Summa's first, second, and third assignments of error are overruled. The judgment of the trial court is affirmed as it relates to Summa.
 IV {¶ 58} We next address Grimm's cross-appeal. Grimm has asserted three cross-assignments of error.
 V Grimm's First Cross-Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING SUMMIT COUNTY CHILDRENS [SIC] SERVICES BOARD'S MOTION FOR A DIRECTED VERDICT."
 {¶ 59} In her first cross-assignment of error, Grimm has argued that the trial court improperly granted a directed verdict in favor of CSB because the conduct of its employees operated to negate sovereign immunity. We disagree.
 {¶ 60} As discussed in Summa's first assignment of error, this Court reviews a trial court's decision to grant or deny a directed verdict de novo. Gugliotta at ¶ 30. Further, an appellate court should affirm the trial court's decision to grant directed verdict if "`when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party.'" Brooks at ¶ 6, quoting Pusey,94 Ohio St.3d at 278. See Civ.R. 50(A)(4). With the standard of review in mind, we next address the issue of CSB's immunity.
 {¶ 61} The Political Subdivision Tort Liability Act (PSTLA) provides political subdivisions with immunity from liability "in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." R.C.2744.02(A)(1). However, the PSTLA provides exceptions to this immunity. See R.C. 2744.02(B)(1)-(5). If a political subdivision falls into one of the enumerated exceptions, the entity may be civilly liable for acts or omissions by it or its employees that result in injury, death or loss of person or property.
 {¶ 62} The Ohio Supreme Court has held that a three tiered analysis should be employed when determining whether a political subdivision is immune from liability under the PSTLA. Cater v.Cleveland (1998), 83 Ohio St.3d 24, 28. The general framework of the analysis was laid out in Cater:
"[O]nce immunity is established under R.C. 2744.02(A)(1), the second tier of analysis is whether any of the five exceptions to immunity in subsection (B) apply. Former R.C. 2744.02(B)(1) through (5). Finally, under the third tier of analysis, immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03
applies." Id. Because we think that CSB is clearly a political subdivision entitled to immunity under R.C. 2744.02(A)(1), we will move on to the next tier in the analysis.
 {¶ 63} Under the second tier in the analysis, we must determine whether any of the five exceptions enumerated in R.C.2744.02(B) apply. Cater, 83 Ohio St.3d at 28. Our review of the record and Grimm's briefs indicate that the only exception argued by Grimm was R.C. 2744.02(B)(5) which states that "a political subdivision is liable for injury, death, or loss to person or property when civil liability is expressly imposed upon the political subdivision by a section of the Revised Code[.]" (Emphasis added).
 {¶ 64} Grimm has sued CSB for its alleged failure to investigate her claim — a duty found in R.C.2151.421(F)(1).[4] Marshall v. Montgomery Cty. ChildrenServ. Bd. (2001), 92 Ohio St.3d 348, 352. However, inMarshall, the Supreme Court specifically held that "within the meaning of R.C. 2744.02(B)(5) and 2744.03(A)(6)(c), R.C.2151.421 does not expressly impose liability for failure to investigate reports of child abuse." (Emphasis added). Id. at 353. The Court went further in stating "[a]ccordingly, even if it failed to investigate a report, [CSB] is insulated from liability by sovereign immunity." Id. That being the case, this Court finds that the exception enumerated in R.C. 2744.02(B)(5) does not operate to nullify CSB's immunity.
 {¶ 65} Grimm has argued in her appellate briefs that R.C.2744.03(A)(5)[5] provides an actionable exception to CSB's immunity. This argument is a misstatement of the law. As detailed in Cater, in the third tier of the analysis "immunity can be reinstated if the political subdivision can successfully argue that one of the defenses contained in R.C. 2744.03 applies."Cater, 83 Ohio St.3d at 28.
 {¶ 66} In Cater, the Court specifically rejected the contention that R.C. 2744.03(A)(5) provided an independent basis for imposing liability. Id. at 32. The Court made clear that R.C.2744.03(A)(5) is simply a defense to liability to be raised by the political subdivision should its immunity be lost under R.C.2744.02(B). As such, it cannot be used to establish liability. Id. See also R.C. 2744.03(A) (stating "[i]n a civil action brought against a political subdivision or an employee of a political subdivision * * * the following defenses or immunities may be asserted to establish nonliability").
 {¶ 67} Grimm has also argued that under Marshall, CSB is only entitled to immunity from claims based on negligence. She has further argued that her claims are not based in negligence, but in the "malicious purpose, in bad faith, or in a wanton or reckless manner" standard of R.C. 2744.03(A)(5). As such, CSB cannot claim immunity. We find that Grimm has misinterpretedMarshall.
 {¶ 68} Marshall was before the Ohio Supreme Court based on a certification of a conflict. Marshall, 92 Ohio St.3d at 351. Therefore, the Court was limited to answering the certified question: "For the purposes of the immunity exceptions in R.C.2744.02(B)(5) and R.C. 2744.03(A)(6)(c), does R.C. 2151.421
expressly impose liability on political subdivisions and their employees for failure to investigate child abuse?" Id. The Court answered the certified question in the negative. Id. at 352. Therefore, Marshall simply stands for the proposition that R.C.2151.421 does not expressly impose liability for failure to investigate reports of child abuse.
 {¶ 69} Based on the foregoing, we find that the trial court did not err in granting CSB's motion for directed verdict because CSB is a political subdivision, protected from civil liability under R.C. 2744.02(A)(1).
 {¶ 70} Grimm's first cross-assignment of error lacks merit.
 Grimm's Second Cross-Assignment of Error
"THE TRIAL COURT ERRED IN GRANTING THE MOTION FOR DIRECTED VERDICT IN FAVOR OF MARK CERNOIA, LORI TESTA, AND SABRINA SYPHERD."
 {¶ 71} In her second cross-assignment of error, Grimm has argued that the trial court erred in granting directed verdict in favor of CSB employees Mark Cernoia, Lori Testa and Sabrina Sypherd ("CSB employees"). As discussed in Grimm's first cross-assignment of error, we review a trial court's decision to grant or deny a directed verdict de novo. Gugliotta at ¶ 30. This Court will affirm the trial court's decision to grant directed verdict if "`when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party.'" Brooks at ¶ 6, quoting Pusey,94 Ohio St.3d at 278. See Civ.R. 50(A)(4).
 {¶ 72} Grimm is correct in stating that an employee of a political subdivision may lose his immunity from liability if he acts or fails to act "with malicious purpose, in bad faith, or in a wanton or reckless manner[.]" R.C. 2744.03(A)(5). This proposition is not in dispute. Generally, the issue of malice, bad faith, and wanton or reckless behavior is a question for the jury. Shadoan v. Summit Cty. Children Serv. Bd., 9th Dist. No. 21486, 2003-Ohio-5775, at ¶ 14, citing Fabrey v. McDonald PoliceDept. (1994), 70 Ohio St.3d 351, 356. However, the standard for demonstrating such conduct is high. Id.
 {¶ 73} In Shadoan, this Court elaborated on the type of conduct that meets the standard set forth in R.C. 2744.03(A)(6). Regarding malice, we stated that "[i]n order for a malicious purpose to exist, there must be ill will or enmity of some sort."Shadoan at ¶ 12. Malice includes "the willful and intentional design to do injury, or the intention or desire to harm another * * * through conduct which is unlawful or unjustified." (Quotations omitted) Id. After a careful review of the record, we think it clear that the CSB employees did not act or fail to act with a malicious purpose.
 {¶ 74} Bad faith "embraces more than a simple misjudgment or negligence." Id. "`It imports a dishonest purpose, moral obliquity, conscious wrongdoing, [or] breach of a known duty through some ulterior motive or ill will[.]'" (Alterations in original). Id. citing Jackson v. Butler Cty. Bd. of Cty.Commsrs. (1991), 76 Ohio App.3d 448, 454. After a careful review of the record, we find that the CSB employees did not act or fail to act in bad faith. That is, there is no evidence of a dishonest purpose, ill will, ulterior motive or moral obliquity regarding the CSB employees' handling of Grimm's case.
 {¶ 75} One acts wantonly when there is a complete failure to exercise any care whatsoever. Fabrey, 70 Ohio St.3d at 356. Importantly, "mere negligence will not be construed as wanton misconduct in the absence of evidence establishing a disposition of perversity on the part of the tortfeasor[.]" Shadoan at ¶ 13, citing Fabrey, 70 Ohio St.3d at 356. After reviewing the evidence presented, we cannot say that the CSB employees completely failed to exercise any care whatsoever. Further, assuming arguendo that the CSB employees were negligent, such negligence does not rise to the level of wanton misconduct in the absence of perversity on the part the tortfeasor. This Court has found no evidence of such perverse or wicked behavior on the part of the CSB employees
 {¶ 76} One acts recklessly if:
"[H]e does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Id. at ¶ 13.
We conclude that the conduct of CSB employees, while arguably negligent, did not rise to recklessness. Even if the CSB employees should have realized that their conduct created an unreasonable risk of harm, it is this Court's opinion that such risk was not substantially greater than the risk associated with mere negligence.
 {¶ 77} With regard to Sabrina Sypherd, the record reflects that she met with Grimm alone, in a neutral and safe location: a hospital. When asked to leave by Sypherd, the Goffs left the room without question. During the interview, Grimm told Sypherd that she had been under the prenatal care of Dr. Harvey Weil in Hudson and that Goff intended to continue to support the family after the baby was born. Grimm denied the allegations that Goff had inappropriately touched her, that she had ever undressed or been naked in front of Goff, or that Goff had ever physically examined her during her pregnancy or labor. Additionally, Grimm readily stated that her mother was her best friend and that Goff was good to her. Based on those facts, Sypherd concluded that there was no imminent danger in releasing Grimm, but recommended follow-up by CSB.
 {¶ 78} With regard to Lori Testa, who was assigned to follow up by CSB, the record reflects that she made between six and ten attempts to visit with Grimm and/or her family. She made also numerous telephone calls and left her business card requesting a return call.
 {¶ 79} Finally, with regard to Mark Cernoia, Testa's supervisor, the record reflects that he testified that sex abuse victims are typically interviewed at hospitals and that there appeared to be no reluctance on Grimm's part to return home. Cernoia pointed out in his testimony that a social worker needs facts to convince the police or a court to remove a child from the care of its family. Cernoia further testified that such facts are generally obtained during the interview with the child. In Grimm's case, not only were facts not obtained, she denied any wrongdoing by Goff.
 {¶ 80} As stated above, while a determination of recklessness, wantonness, malice or bad faith is generally left to the jury, the standard is very high and we review the evidence de novo. We reiterate that this Court should affirm the trial court's decision to grant directed verdict if "when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds could only find against the nonmoving party." (Quotations omitted). Brooks at ¶ 6. See Civ.R. 50(A)(4). After a careful review of the record, we have not found sufficient evidence that would cause reasonable minds to differ on whether the CSB employees acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, this Court must affirm the directed verdict.
 {¶ 81} While the CSB employees arguably may have discharged their duties in a negligent fashion, a finding of negligence "is simply insufficient, as a matter of law, to rebut the presumption of immunity." Shadoan at ¶ 15. Accordingly, we find that the conduct of the CSB employees did not rise to the level of malicious, bad faith, reckless or wanton misconduct.
 {¶ 82} In closing, we recognize the tension between affirming the verdict against Summa and a denial of Grimm's cross-appeal against the individual CSB employees. We resolve that tension by noting that while in the hospital, before and after delivery of her child, Grimm was especially vulnerable and unable to separate herself from Goff. When CSB was finally notified and interviewed Grimm, she was on the verge of discharge and out of fear, kept silent. Ann Burgess, Grimm's expert, testified that the non-disclosure or denial is one of the most common features seen in abused children. Burgess further testified that the primary reason for denial or non-disclosure is fear of retribution for telling. Burgess testified that this fear is often derived from threats made by the abuser to keep the child quiet. Had CSB been notified earlier, it could have isolated Grimm from Goff pending an investigation. Such an investigation would have been conducted during Grimm's stay at the hospital, where there was greater control over the Goffs and a greater likelihood of determining the truth.
 {¶ 83} Grimm's second cross-assignment of error lacks merit.
 Grimm's Third Cross-Assignment of Error
"THE POLITICAL SUB DIVISION [SIC] TORT LIABILITY ACT (PSTLA) IS UNCONSTITUTIONAL."
 {¶ 84} In her third assignment of error, Grimm has argued that the statute granting CSB immunity from liability is unconstitutional under the Ohio constitution. Specifically, she has argued that the PSTLA violates an Ohio citizen's right to a remedy (Art. I, Sec. 16), right to a jury trial (Art. I, Sec. 5), right to due process of law (Art. I, Sec. 16), and right to equal protection of the law (Art. I, Sec. 2). We disagree.
 {¶ 85} This Court has held that "legislative enactments enjoy a presumption of validity and constitutionality." Shadoan at ¶ 6, citing Adamsky v. Buckeye Local School Dist. (1995),73 Ohio St.3d 360, 361. Accordingly, "a statute should be held void only when it has been proven unconstitutional beyond a reasonable doubt." Shadoan at ¶ 6, citing Fabrey, 70 Ohio St.3d at 352. In Shadoan, the appellant challenged the PSTLA on the same constitutional grounds as cited in the instant matter: the right to a remedy, the right to a jury trial, the right to due process and to equal protection of the law.
 {¶ 86} In Shadoan, this Court declined to strike down the PSTLA as unconstitutional because the plurality opinion inButler v. Jordan (2001), 92 Ohio St.3d 354, (expressing concern that R.C. 2744 et seq. may be unconstitutional) did not command a majority on the Ohio Supreme Court. Shadoan at ¶ 7.
 {¶ 87} Based on our holding in Shadoan, we decline to strike down the PSTLA as unconstitutional.
 {¶ 88} Grimm's third cross-assignment of error lacks merit.
 VI {¶ 89} Grimm's first, second, and third assignments of error are overruled. The judgment of the trial court is affirmed as it relates to CSB and the CSB employees.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants/Cross-Appellees.
Moore, J. Boyle, J. concur.
[1] We discuss this exposure in more detail in section B infra.
[2] Summa employees' suspicions and the onset of those suspicions are discussed in greater detail in section C infra.
[3] See section A supra.
[4] 2151.421(F)(1) states: "Except as provided in section2151.422 of the Revised Code, the public children services agency shall investigate, within twenty-four hours, each report of known or suspected child abuse or child neglect and of a known or suspected threat of child abuse or child neglect that is referred to it under this section to determine the circumstances surrounding the injuries, abuse, or neglect or threat of injury, abuse, or neglect, the cause of the injuries, abuse, neglect, or threat, and the person or persons responsible."
[5] R.C. 2744.03(A)(5) states: "The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."