OPINION
{¶ 1} Appellants, John Effingham, Northwest Hornet, and John Effingham Distributing, appeal the judgment entered by the Portage County Court of Common Pleas. Following a jury trial and an entry of judgment in favor of appellants, the trial court granted a motion for a new trial filed by appellees, XP3 Corporation and Otto Jackson. We affirm.
 {¶ 2} The background to this dispute is as follows. Effingham read about a product named the Hornet and wanted to sell the product. The Hornet is manufactured *Page 2 
by the XP3 Corporation, which is based in Portage County, Ohio. Otto Jackson is the President and primary shareholder of XP3 Corporation. Effingham lived in Oregon. Effingham contacted Otto Jackson, and a contract was entered into between XP3 Corporation and John Effingham Distributing, an entity Effingham created for the purpose of distributing the Hornet. Under the contract, John Effingham Distributing was described as a "Master Distributor" and was to purchase bulk quantities of the Hornet from XP3 Corporation and resell them to customers. John Effingham Distributing operated under the name Hornet Northwest.
 {¶ 3} The contract called for appellants to purchase 11 master cases of the product from appellees per calendar quarter. Appellees agreed to market the product, forward sales leads to appellants, and to provide a link from appellees' website to appellants' website.
 {¶ 4} The relationship between the parties lasted approximately four years. During that time, appellees never provided the link to appellants' website, and appellants often failed to order the quota of 11 master cases per calendar quarter.
 {¶ 5} In 2004, appellants initiated the instant lawsuit against XP3 Corporation and Otto Jackson in his personal capacity. The complaint alleged that appellees breached the contract between the parties and committed fraud. Appellees filed an answer and counterclaim. Therein, appellees claimed the appellants also breached the contract. Appellees sought declaratory judgment terminating the contract.
 {¶ 6} In 2006, the matter proceeded to a jury trial on appellants' complaint. Both Jackson and Effingham testified. Following the presentation of evidence, upon appellees' motion, the trial court dismissed the causes of action against Jackson in his *Page 3 
individual capacity, ruling that appellants did not present evidence sufficient to pierce the corporate veil. In addition, the trial court dismissed the fraud claim against XP3 Corporation, ruling that appellants did not meet their burden on this claim. Finally, the trial court instructed the jury that they were not to consider damages relating to lost profits, because appellants did not present credible and precise evidence on this issue. The jury returned a unanimous verdict in favor of appellants, in the amount of $52,800. There were no jury interrogatories.
 {¶ 7} On May 3, 2006, the trial court awarded judgment in favor of appellants in the amount of $52,800. On May 9, 2006, the trial court issued a judgment entry pertaining to appellees' counterclaim. The trial court noted that appellees dismissed their claim for breach of contract. In regard to the second portion of the counterclaim, the declaratory judgment action, the trial court ruled that both parties breached the contract and declared that the contract was null and void.
 {¶ 8} XP3 Corporation then filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial under Civ.R. 59. Appellants filed a brief in opposition to XP3 Corporation's motion. The trial court granted XP3 Corporation's motion for a new trial on the grounds that the jury verdict was excessive and not supported by the manifest weight of the evidence.
 {¶ 9} Appellants have timely appealed the trial court's judgment entry granting XP3 Corporation's motion for a new trial. We note that a motion granting a new trial is a final, appealable order. R.C. 2505.02(B)(3);State ex rel. Roulhac v. Probate Court (1970), 21 Ohio St.2d 105, 107. *Page 4 
 {¶ 10} Appellants did not immediately file a transcript of the jury trial. In response to appellants' brief, appellees' reply brief focused primarily on the lack of a transcript in advocating that trial court's judgment entry be affirmed. After briefing, in November 2006, appellees filed a motion to dismiss this appeal due to appellants' failure to file a transcript. This court denied appellees' motion, holding that the lack of a transcript did not affect our jurisdiction to hear the appeal. In February 2007, this court granted appellants' motion to supplement the record with the transcripts and exhibits of the jury trial, and the record was supplemented accordingly.
 {¶ 11} Appellants raise the following issue for our review, which is construed by this court as an assignment of error:
 {¶ 12} "Whether the Portage County Court of Common Pleas erred by disregarding the jury's unanimous verdict in the amount of [$52,800] against Defendant XP3 Corporation and by ordering a new trial."
 {¶ 13} The trial court granted a new trial pursuant to Civ.R. 59, which provides, in pertinent part:
 {¶ 14} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 15} "* * *
 {¶ 16} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 17} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case[.]" *Page 5 
 {¶ 18} This court reviews a trial court's judgment on a Civ.R. 59 motion for new trial under the abuse of discretion standard. Reihard v.Trumbull Cardiovascular Care, Inc., 11th Dist. No. 2005-T-0072,2006-Ohio-4312, at ¶ 29, quoting Ochletree v. Trumbull Mem. Hosp., 11th Dist. No. 2005-T-0015, 2006-Ohio-1006, at ¶ 32-33. "The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" (Citations omitted.) Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Further, the trial court is to engage in a limited weighing of the evidence when ruling on a Civ.R. 59 motion. Reihard v.Trumbull Cardiovascular Care, Inc., 2006-Ohio-4312, at ¶ 29, quotingOchletree v. Trumbull Mem. Hosp., 2006-Ohio-1006, at ¶ 32-33. The same standard for manifest weight of the evidence is used for a trial court's ruling on a Civ.R. 59 motion as is generally used by a reviewing court when determining if a civil judgment is against the manifest weight of the evidence. Id. at ¶ 30. That standard is:
 {¶ 19} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 20} In this matter, the relevant contract language pertaining to appellants' obligations provides:
 {¶ 21} "XP3 Corporation requires the Master Distributor to purchase a minimum of 11 Master Cases each calendar quarter."
 {¶ 22} Moreover, regarding appellees' obligations, the contract states: *Page 6 
 {¶ 23} "XP3 Corporation shall promote and maintain its own web-site and shall provide a link to the Master Distributors web-site which will include the Master Distributors mailing and e-mail addresses and telephone and fax numbers.
 {¶ 24} "XP3 Corporation shall advertise in national publications including, but not limited to, fleet trucking, law enforcement, recreational vehicle publications, etc. XP3 Corporation shall forward sales leads to the nearest Master Distributor for follow up."
 {¶ 25} These were the three primary clauses of the contract that were subject to dispute at the jury trial. Appellants argued that appellees failed to link their website with appellants' website and failed to provide leads on perspective customers. Appellees claim appellants failed to meet their quarterly quota of purchasing cases of the product.
 {¶ 26} The undisputed evidence at the jury trial was that appellees never linked their website to appellants' website. Appellees argue that one of the reasons they did not link the websites was that appellants' website contained links to adult websites. However, Effingham testified that there were no direct links from his websites to adult websites; rather, certain links from his website, for example, motorcycle manufacturers' websites, contained links to adult websites. Effingham further testified that he removed these links when he realized they subsequently led customers to inappropriate material. There was substantial evidence that appellees breached the contract by failing to link their website to appellants' website, as called for by the contract.
 {¶ 27} Appellants also presented evidence that appellees breached the contract by failing to forward all leads to appellants. As an example, Effingham testified that he quoted a price for an order for a company in Colorado. The price he quoted was the price agreed upon between appellees and appellants. Effingham later learned that the *Page 7 
Colorado company contacted appellees directly, and that appellees sold the product to the Colorado company at a lower price. Thus, there was evidence that appellees breached the contract by not forwarding sales leads to appellants.
 {¶ 28} One issue was whether appellants substantially performed the contract. Appellees argue that appellants breached the contract by not meeting their monthly ordering quota. We note that a breach of a portion of a contract may discharge the obligations of the parties if the breach is deemed "essential to the performance of the agreement." (Citations omitted.) Software Clearing House, Inc. v. Intrak, Inc. (1990),66 Ohio App.3d 163, 170.
 {¶ 29} Effingham admitted that there were several quarters where appellants did not order 11 Master cases as required by the contract. However, he explained that this failure was a direct result of appellees' failure to forward sales leads to appellants and their failure to link the respective websites. Effingham estimated that appellees averaged about 20 sales per week directly from their website. He testified that had appellees forwarded these leads to appellants and provided the link between the websites, he would have been able to meet the ordering quota. There was sufficient evidence before the jury for it to conclude that appellants' failure to fully meet the ordering quota was a direct and proximate result of appellees' breach of the contract in failing to forward sales leads and in failing to provide a link to appellants' website.
 {¶ 30} We next address whether the jury's award of damages was supported by competent, credible evidence. *Page 8 
 {¶ 31} We note that damages for a breach of contract "are to be compensatory in nature and not punitive." Nelson Sand Gravel v.Ring, 11th Dist. No. 2001-A-0058, 2002-Ohio-6467, at ¶ 17. Further, this court has consistently held:
 {¶ 32} "The party seeking damages in a breach of contract action bears the burden of proving the nature and extent of his or her damages in order to be entitled to compensation. Arko-Plastics v. DrakeIndustries (1996), 115 Ohio App.3d 221, 226. As a result, an injured party cannot recover damages for breach of contract in excess of the amount that is established by the evidence with reasonable certainty.Cordy v. D G Pools, Inc. (Dec. 26, 1997), 11th Dist. No. 97-T-0079, 1997 Ohio App. LEXIS 5849, at *5.'" Victorian Room Banquet Ctr. v.Bernard, 11th Dist. No. 2006-T-0010, 2006-Ohio-4946, at ¶ 15, quotingNelson Sand Gravel v. Ring, 2002-Ohio-6467, at ¶ 18.
 {¶ 33} Effingham testified that he has lost approximately $42,000 due to appellees' breaches of the contract. This amount included, in part, his travel expenses trying to sell the product; expenditures made to an internet company to create other websites to market the product, and advertising expenses. He testified that these expenses were necessary because appellees were not forwarding sales leads to appellants and did not link the respective websites.
 {¶ 34} We note that Effingham's testimony regarding damages was vague and generalized. For example, he testified that each of the websites cost "about fifteen, seventeen hundred dollars, in that neighborhood * * * I'm not sure. I just paid it." Also, he testified that appellants "probably spent a couple thousand dollars a year" in print advertising. Finally, in regard to travel expenses, Effingham testified: *Page 9 
 {¶ 35} "And show expenses. Trade show would cost four or five hundred dollars to six hundred, some or more expensive than that. I couldn't go to the more expensive trade shows. You know, when you buy a motel room, 75 to hundred dollars a night and I don't have it all added up but gas and insurance and all that stuff, I usually spent five thousand dollars a year in just promoting the Hornet."
 {¶ 36} Appellants did not introduce any receipts or other documents into evidence to support Effingham's testimony regarding the specific expenses.
 {¶ 37} In addition to Effingham's testimony, appellants submitted Schedule C forms from Effingham and his wife's income tax returns for 2001 through 2005. Collectively, these forms show a loss of $67,451. Effingham testified that the majority of the loss was due to the instant contract; however, he acknowledged on cross-examination that all of the losses were not attributed to the business venture with appellees.
 {¶ 38} Although the jury's verdict of $52,800 is between the figure of $42,000 testified to by Effingham and the figure of $67,451 shown on the schedule Cs, there is no other evidence to support this specific amount. Moreover, as previously discussed, the figures of $42,000 and $67,451 were not precise, as the first figure was entirely based on estimates, and the loss figure from the Schedule Cs included losses not attributable to the instant contract. Accordingly, the jury's verdict was not supported by the evidence with reasonable certainty.
 {¶ 39} In this matter, there were no jury interrogatories. Appellants cite several cases for the proposition that the failure to submit jury interrogatories precludes a subsequent attack on the jury's verdict. SeeGrimm v. Summit Cty. Children Servs. Bd., *Page 10 
9th Dist. No. 22702, 2006-Ohio-2411, at ¶ 36; Parm v. Ramsey, 7th Dist. No. 04 MA 258, 2005-Ohio-4505, at ¶ 15; Antonoff v. Allstate Ins.Co., 7th Dist. No. 03 MA 105, 2004-Ohio-5681, at ¶ 11; and Freeman v.Norfolk W. Ry. Co. (1994), 69 Ohio St.3d 611, 613-614. Initially, we note that all of these cases are based in tort law. Grimm v. Summit Cty.Children Servs. Bd., 2006-Ohio-2411, at ¶ 3; Parm v. Ramsey,2005-Ohio-4505, at ¶ 2, 4; Freeman v. Norfolk W. Ry. Co., 69 Ohio St.3d. at 611; and Antonoff v. Allstate Ins. Co., 2004-Ohio-5681, at ¶ 3-6 (In Antonoff, the plaintiff was injured in an automobile accident and sought uninsured motorist coverage.) None of these cases concerned a straight contract case. Id.
 {¶ 40} Further, some of the cases involved multiple issues. InAntonoff, there were no jury interrogatories on the issue of what part of the damages awarded by the jury represented physical versus mental injuries. Antonoff v. Allstate Ins. Co., 2004-Ohio-5681, at ¶ 11. The Seventh Appellate District held that the insurance company's argument that the evidence did not support the verdict with regard to a specific injury was without merit, as there was evidence at trial of multiple injuries and the jury only returned a general verdict. Id. Further, the court noted that the insurance company did not file a motion for a new trial. Id. at ¶ 13. In Parm, the jury interrogatory was a compound question. Parm v. Ramsey, 2005-Ohio-4505, at ¶ 10. The Seventh District held that it was unclear whether the jury determined that defendant was not negligent or if the defendant's negligence was not the proximate cause of the plaintiff's injuries, thus, under the two-issue rule, the plaintiff was unable to demonstrate she was prejudiced by the trial court's subsequent jury instructions, as there was no way to know if the jury actually reached those issues. Id. at ¶ 17-18. Both of these matters are distinguishable *Page 11 
from the case sub judice, where the only issue for the jury to decide was the amount of damages for the breach of contract.
 {¶ 41} In Grimm, a pregnant, teenage girl was awarded damages on a negligence claim against a hospital for the hospital's failure to report child abuse. Grimm v. Summit Cty. Children Servs. Bd., supra. The Ninth Appellate District held that the hospital's failure to submit jury interrogatories precluded subsequent challenge of the jury's determination regarding proximate cause and its award of damages. Id. at ¶ 36-37. We note that Grimm was a complicated case, in which multiple hospital employees made references to suspected child abuse of the 17-year-old mother in various records. Id. at ¶ 31-36. The jury ultimately found the hospital liable and awarded damages in favor of the 17 year old. Id. at ¶ 37. It is important to note that the damages award in Grimm was based in tort, for emotional injuries to a teenage mother, i.e., the hospital's failure to report child abuse and permitting the alleged abuser to see the teenage mother naked in the delivery room. Id. at ¶ 31-36. This is vastly different than the case at bar, where the jury was asked to determine a much simpler matter, i.e., what were appellants' damages for appellees' breach of the contract.
 {¶ 42} None of the cases cited by appellants is directly controlling of the instant matter. Again, none of the cases concerned an award of damages for breach of contract. As noted above, this court has held that an award of damages must be "`"established by the evidence with reasonable certainty."`" Victorian Room Banquet Ctr. v. Bernard,2006-Ohio-4946, at ¶ 15. (Citations omitted.)
 {¶ 43} Also, appellees argued that the verdict rendered by the jury and the subsequent judgment from the trial court are inconsistent. It must be noted that the *Page 12 
appellees' first cause of action for breach of contract was dismissed. The trial court was only ruling on whether to grant a declaratory judgment that the contract was no longer enforceable. The trial court determined that, due to the breaches of the contract by both parties, the contract was null and void. Technically, the language of the trial court was inaccurate. Null and void would mean the contract never existed. The context indicates there was a contract but it was now terminated and prospectively unenforceable.
 {¶ 44} There was no competent, credible evidence presented to support the jury's verdict in the amount of $52,800. Thus, the trial court did not abuse its discretion by granting appellees' motion for a new trial.
 {¶ 45} Appellants' assignment of error is without merit.
 {¶ 46} The judgment of the trial court is affirmed.
MARY JANE TRAPP, J.,
GENE DONOFRIO, J., Seventh Appellate District, sitting by assignment, concur. *Page 1